554 P.2d 1267

**The STATE of Arizona, Appellee,**

v.

**Roger Terry Lee WARE, Appellant.**

**No. 3475.**

Supreme Court of Arizona,
In Banc.

Sept. 7, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Michael G. Sullivan, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal by Roger Terry Lee Ware from a jury verdict and judgment of guilt to one count of robbery and one count of armed robbery, A.R.S. §§ 13-641 and 13-643, and concurrent sentences thereon of not less than five nor more than seven years for robbery, and not less than ten nor more than fifteen years for armed robbery.

Two questions are raised by this appeal:

1. Was the in-court identification impermissibly tainted by pretrial identification?

2. Was the sentence excessive?

The facts necessary for a determination of the issues raised by this appeal are as follows. On 12 March 1975, a Shop'N Go Market located at 43rd Avenue and Thomas was robbed. A clerk, Kenneth Wayne Swim, was on duty at the time. The suspect was armed with a small caliber pistol. On 29 March, a 7-11 Store at 6650 West Thomas Road was robbed. James Horton was working in the store when the incident took place.

On 2 April 1975, Detective Hayden Williams of the Phoenix Police Department showed both victims a photo lineup consisting of six photographs. Defendant's picture was included in this group. Mr. Swim who had been shown two prior photo lineups, neither of which included photos of the defendant, was unable to identify

any of the individuals as the suspect. Mr. Horton, however, tentatively identified the defendant's photograph indicating that he was unsure of the identification because the picture showed the defendant smiling while the suspect had not been smiling during the alleged robbery. At that point, Detective Williams produced a second photo of the defendant, not smiling, which Mr. Horton positively identified.

On 8 April 1975, a preliminary hearing was held in Tolleson Justice Court. Neither Mr. Swim nor Mr. Horton testified at that hearing. However, both men were present outside the courtroom prior to the hearing and both identified the defendant as the suspect. Both men separately indicated they had seen the defendant outside the courtroom in jail apparel and in the custody of a number of police officers and subsequently inside the court at the defense table.

## WAS THE IN-COURT IDENTIFICATION TAINTED?

Defendant contends that the photographic identification procedure involving Mr. Horton was unduly suggestive. In addition, he asserts that the identification which occurred prior to the preliminary hearing was also unduly suggestive and thus tainted the in-court identification.

 Questions as to whether there has been an accurate in-court identification of the defendant, not tainted by prior identification procedures and whether such procedures were fair, are preliminary questions for the trial court, *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969), cert. den. 307 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970), and the trial court's determination will not be overturned on appeal absent a clear and manifest error. *State v. Milonich,* 111 Ariz. 442, 532 P.2d 504 (1975); *State v. Williams,* 111 Ariz. 175, 526 P.2d 714 (1974).

Defendant first argues that the photo lineup conducted for Mr. Horton was unduly suggestive because he was the only suspect shown in a blue denim jacket;

Horton having previously indicated that the suspect wore a blue denim jacket during the robbery.

At trial, pursuant to *State v. Dessureault,* supra, the court held a hearing to determine whether or not the identification should be suppressed. During that hearing, no testimony was given to indicate that the jacket played any part in Mr. Horton's identification of the defendant. Horton testified that he selected defendant's photo from the first series of photographs presented to him. While he was uncertain initially, once he had been shown the photo of the defendant not smiling he remained absolutely certain and unwaivering in his identification:

"Q What happened when you looked at those photos?

"A Well, I kind of identified one photo, but I didn't say that that was the man for sure, and he showed me another photograph of the same man and I identified that one.

"Q Did the police officer say anything before he gave you the photos?

"A He just said he was going to show me a lineup of photos, and if anyone looks familiar, tell him.

\* \* \* \* \* \*

"Q Did you say anything to the officer when you say you sort of identified one photo?

"A Yes. The photo with a man, with a smile in it, and I think—and I couldn't be positive of it because he wasn't smiling the night of the robbery.

"Q And then, after you said that, was it then that he gave you another photograph?

"A Yes.

"Q What happened then?

"A I identified it as the man that robbed me."

In the course of his testimony at the Dessureault hearing, Mr. Horton specifically stated that he recognized the defend-

ant "from the night of the robbery." At trial, he repeated that testimony. During cross-examination, the defendant's attorney brought out the fact that the defendant was the only individual in the lineup wearing a blue denim jacket. However, Horton's testimony does not indicate that he relied on this fact in identifying the defendant or that he was at all uncertain about the identification. On cross-examination, Horton testified as follows:

"Q Were you shown any pictures by any police officers concerning this incident?

"A Yes, I was.

"Q And did you select a picture of somebody that you believed to be the person involved?

"A Yes, I did.

"Q And do you recall if that person was wearing a blue jacket at that time?

"A In the picture?

"Q In the picture.

"A No, I don't recall.

"Q I show you what has been marked as State's Number 3; do these appear to be the pictures shown to you by the police officers?

"A Yes, they do.

"Q And how many people are wearing the blue denim jackets in those photos?

"A One.

"Q Do you recall if that's the picture you selected?

"A This picture here?

"Q Yes.

"A No, I don't think it is."

■ In our opinion, the fact that the defendant was wearing a blue denim jacket in the photograph shown to the witness does not, of itself, require the exclusion of the identification. It is clear following *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), that suggestiveness alone does not necessitate the exclusion of evidence. Rather, the question is whether under the "totality of the circumstances" the identification was "reliable." *Neil v. Biggers,* supra.

"[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968).

■ *Neil v. Biggers,* supra, lists five factors to be evaluated in considering the reliability of the identification:

1. The opportunity of the witness to view the criminal at the time of the crime,

2. the witness' degree of attention,

3. the accuracy of the witness' prior description of the criminal,

4. the level of certainty demonstrated by the witness at the confrontation, and

5. the length of time between the crime and the confrontation.

■ Here Mr. Horton had ample opportunity to observe the suspect during the crime; his attention was clearly focused upon the suspect; his description to the police matches the defendant; he remained absolutely certain of his identification and the confrontation took place less than five days after the crime itself. We find no error.

■ Defendant next argues that the in-court identification was tainted by the procedures which took place at the preliminary hearing. We disagree. That there has been a confrontation at the preliminary hearing does not necessarily result in a denial of due process. *State v. Fields,* 104 Ariz. 486, 455 P.2d 964 (1969). Mr. Swim

testified at the Dessureault hearing as follows:

"Q After you saw those photographs, the two groups of photographs, did you ever see the person that robbed you?

"A Only at the preliminary hearing.

"Q Would that be out in the Tolleson—

"A Yes.

"Q Where did you see the gentleman that robbed you?

"A With the deputy sheriff, I presume it was.

"Q How did you know that that was the person that robbed you?

"A By my own observation of the man.

"Q Did anyone suggest to you that that might be the person that robbed you?

"A· No, sir.

"Q And were you sure that that was the person?

"A Yes."

On cross-examination, Mr. Swim further testified as follows:

"Q Did he [the police officer] tell you that the person that robbed you was there—present?

"A No.

> \* \* \* \* \* \*

"Q Did you ever talk to Mr. Horton about the suspect while you were waiting for the preliminary hearing to begin?

"A No."

Mr. Horton was also questioned as to his identification at the preliminary hearing:

"Q After you saw those photos, did you ever see the person that robbed you again?

"A Yes, I did.

"Q Where was that, please?

"A That was at a hearing in Tolleson.

"Q How did it happen that you saw him there?

"A He was just standing outside the courtroom.

"Q And then, did anyone ask you or did you tell anyone that you saw him there?

"A I identified him to the attorney out there and a police officer, that's all.

"Q How did you know it was the man that had been involved in the robbery?

"A I recognized him from the night of the robbery."

We find no error.

## EXCESSIVE SENTENCE

■ Defendant contends that the sentence imposed is excessive under the circumstances. Defendant was sentenced on the count of robbery to not less than five nor more than seven years and on the count of armed robbery to not less than ten nor more than fifteen years in the Arizona State Prison. The sentences are concurrent. We have stated:

"The legislature has given the trial court broad discretion in sentencing a defendant for a period within the statutory minimum and maximum. Because a defendant appears in person before the trial judge, the trial judge is, in most instances, better able than we to evaluate the defendant and his circumstances and to determine what action will most likely rehabilitate him to constructive activity. (citation omitted) Accordingly, this Court has consistently held that the pronouncing of a sentence is within the sound discretion of the trial court and that we will uphold a sentence if it is within the statutory limits unless there is a clear abuse of discretion. (citations omitted)" *State v. Smith,* 107 Ariz. 218, 219, 484 P.2d 1049, 1050 (1971).

We find no error.

Judgments and sentences affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.