559 P.2d 136

The STATE of Arizona, Appellee,

v.

Timothy REID, Appellant.

No. 3085.

Supreme Court of Arizona, In Banc.

Nov. 5, 1976.

18

Clay G. Diamos, Tucson, for appellant.

CAMERON, Chief Justice.

This is an appeal by defendant Timothy Reid from verdicts of guilty to charges of first degree murder, A.R.S. §§ 13–451 and 452; armed robbery, A.R.S. §§ 13–641 and 643; armed burglary, A.R.S. § 13–302; robbery, A.R.S. § 13–641; burglary, A.R.S. § 13–302; and theft of a motor vehicle with intent to temporarily deprive the owner, A.R.S. § 13–672. Defendant was sentenced to life imprisonment on the murder count; received concurrent sentences of 60 years to life on the armed robbery, armed burglary and robbery counts; 14 to 15 years on the burglary count; and time served on theft of a motor vehicle count.

We must answer the following questions on appeal:

1. Did the court err in denying defendant's motion for change of venue?
2. Did the court err in denying defendant's application for a change of judge?
3. Was defendant denied his right to be tried by an impartial jury due to the fact that no blacks were on the panel from which the jury was selected?
4. Did the court err in requiring defendant to wear shackles during the trial?
5. Was defendant entitled to have new counsel appointed at his request?
6. Was the warrantless search of defendant's apartment an unlawful search and seizure?
7. Did the affidavit underlying the telephonic search warrant contain sufficient facts and circumstances to support a finding of probable cause?
8. Was the preliminary hearing testimony of witnesses Linda Hagood, Jacqueline Knight, and Meredith

Brown properly admitted into evidence?

9. Did the court err in denying defendant a hearing concerning the in-court identification testimony of Eleanor Gallman and Joseph Mascari?

10. Did the court properly admit into evidence the videotaped testimony of a prosecution witness?

11. Should a mistrial have been granted on the basis of the testimony of Nancy de Muth?

12. Did the court improperly admit cumulative evidence?

13. Did the court improperly permit the State to introduce evidence of flight?

14. Were the sentences imposed excessive?

On the evening of 30 May 1974, at approximately 9:00 p.m., one or more persons entered the home of Mr. and Mrs. Paul W. Miles, slipped pillowcases over the Miles' heads, bound their victims with coathangers, forced them to lie on the floor, and ransacked the house for approximately 45 minutes. Neither of the victims saw the intruders' faces, although Mr. Miles was able, from seeing one of the person's hand and arm, to say that he was black. At approximately 11:30 p.m., the Miles freed themselves and called the police. Missing were numerous items, including credit cards, jewelery, silverware, and Mr. Miles' newly purchased 1974 Ford Gran Torino, which was colored light blue with a dark blue vinyl top.

At approximately 10:00 p.m. on the same night, two black men came to the door of Mr. Joseph Mascari who lived on the southwest side of Tucson, approximately 3 miles from the Miles residence. Mr. Mascari spoke through a screen door to one of the men whom he identified at trial as defendant Timothy Reid eventually refusing him permission to use his telephone. Mr. Mascari observed the two men get into a car which he described as a fairly new sedan with a light colored body and a darker roof. He testified that the men sat in the car which was parked across the street from his house for approximately 10 minutes before driving away.

At approximately 10:25 p.m., two black males, one of whom displayed a gun, walked through an open door at the home of Mr. and Mrs. Albert Gallman, a few blocks from the Mascari residence. The men ordered Mr. and Mrs. Gallman, who were in their dining room downstairs, to get down on the floor; one of the intruders threw a blouse over Mrs. Gallman's head. At the defendants' trials, Mrs. Gallman identified the men as Spencer Watson and Timothy Reid, stating that Reid carried the gun.

Once Mr. and Mrs. Gallman were on the floor, the two men demanded money; one of them searched through Mrs. Gallman's purse complaining when he discovered that it contained only $5 and some credit cards. Meanwhile, the other went upstairs, fired a shot, and forced his way into the bedroom of Nancy de Muth, Mrs. Gallman's daughter. Nancy testified that the man pointed a gun at her and ordered her to lie face down on her bed. She then heard footsteps followed by a series of gunshots and Mr. Gallman crying out. At that point, she opened her window and slid down a pipe to the ground. At about the same time that the first shot was fired, Mrs. Gallman got up and ran out of the house.

At this point, the sequence of events between the intruders and Mr. Gallman is not clear. It is clear, however, that Mr. Gallman, a border patrolman, obtained a gun and fired twice before being shot 4 times in the back, and that he died as a result of his wounds. There was evidence to suggest that Mr. Gallman grabbed his revolver, which he usually kept in a briefcase in the living room, and fired at defendant Reid as Reid was exiting the house. According to this version of the facts, the codefendant Spencer Watson, coming down the stairs, saw Gallman firing at Reid and shot Gallman from behind.

At approximately 11:30 a.m. on 31 May, Reid and Watson were stopped for questioning by a uniformed police officer who

observed the two shaking a gate and then running away at the sight of a policeman. As the officer was attempting to frisk the two men for weapons, Reid ran away from the scene. The officer grabbed Watson by the arm, but as he looked up to follow Reid's flight, Watson struck him in the left temple and also ran off. The two suspects were apprehended separately following a brief search.

Reid and Watson were originally charged as codefendants. A defense motion to sever was granted on 29 July 1974, after the arraignment and omnibus hearing. On 6 September, a consolidated hearing was held on various motions, including defendants' motions to have a change of venue, to suppress evidence, statements and identification, and to declare the death penalty unconstitutional, as well as a motion by the State for videotape testimony. The court, by minute entry dated 10 September 1974, denied the defendants' motion for change of venue and their death penalty motion. The defendants were tried separately. Watson was found guilty of first degree murder; armed robbery; armed burglary; robbery and burglary; theft of a motor vehicle; and obstruction of justice. *State v. Watson,* 114 Ariz. 1, 559 P.2d 121 (1976) filed this day. Reid was found guilty by a jury and from these verdicts, judgments, and sentences he appeals.

## CHANGE OF VENUE

■ Defendant contends that the trial court erred in refusing his motion for a change of venue asserting that the change of venue should have been granted based upon the publicity in the record and the jurors' responses to voir dire questioning when considered in conjunction with the inflammatory nature of the crime.

The standard for the granting of a change of venue for prejudicial pretrial publicity under Rule 10.3(b), Arizona Rules of Criminal Procedure (1973), which must be proved by the defendant, is that "the dissemination of the prejudicial material will probably result in the party being deprived of a fair trial." We have stated:

"* * * the trial court's ruling on a motion for change of venue will not be disturbed on appeal unless a clear abuse of discretion appears and is shown to be prejudicial to the defendant. (citations omitted)" *State v. Ferrari,* 112 Ariz. 324, 332, 541 P.2d 921, 929 (1975).

This is true not only because the trial judge is better able to assess the demeanor of the jurors in answering the questions concerning the effect of pretrial publicity upon them and the decisions they will be asked to make, but also a trial judge is better able to know the attitudes and emotions present in the community concerning the case in question at the time of the trial than we would viewing a cold record at a later date. To persuade this court that the trial court abused its discretion in not granting a change of venue, a party has a heavy burden which defendant has not carried in the instant case. We have read the examination of the jury as well as the complete record. We find no abuse of the trial court's discretion in denying the motion for change of venue.

## CHANGE OF JUDGE

Prior to trial, the attorney for defendant and the attorney for the State met and agreed to the date of the trial and the judge who would try the case. After numerous motions had been heard by the trial judge and had been ruled upon, the defendant moved, on the day of the trial and pursuant to Rule 10.2, Arizona Rules of Criminal Procedure (1973), for a change of judge.

Rule 10.4, Arizona Rules of Criminal Procedure (1973), provided in part at the time of Reid's trial:

"a. *Waiver.* A party loses his right under Rule 10.2 to a change of judge when he agrees to the assignment of the case to a particular judge or participates before him in an omnibus hearing, any subsequent pretrial hearing, a hearing under Rule 17, or the commencement of trial."

■ Defendant's request was not timely according to the rule and the trial judge

was correct in denying it as being untimely. The defendant, however, raised before the trial court and on appeal the question of his consent to his attorney's agreement to have the matter tried before Judge Richey:

"THE DEFENDANT REID: Your Honor, the prosecutor mentioned that an agreement was made concerning who the judge would be. I wasn't advised of this. I feel I should, they should have asked me or found out what I had to say in regard to this. There was no mention of this to me, and I feel for an agreement to be made, it has got to be made so me having some say so, you know, about it, because I am the one being tried here, not him. There wasn't no mention who the judge will be or that they had agreed that you would be judge. I wasn't aware it happened.

"THE COURT: Normally, Mr. Reid, I guess what happens is that counsel get together, who have tried many cases, and they kind of determine this.

The record may show as to what you said, that at the time this agreement was made, that you had no knowledge of it and that it was done by your, I guess, by counsel without your knowledge.

\* \* \* \* \* \*

"MR. HAYES: That is correct, Your Honor. This motion for a change of judge really came to light recently.

"THE COURT: This is the first time I have heard anything about it until this morning.

"MR. HAYES: I can't say I sat down and actually talked with the Defendant in particular with regard to this Court because it is my feeling the Defendant doesn't know which judge or what judges or what courtroom any particular judge sits, and I felt that was the decision I had to make in this particular case and I think I did mention that to the Defendant. I can't say that I honestly sat right down with him and told him it would be in this court because I don't think in the beginning it would have made any sense to him at that time because I don't think he knew anything about the judge in this particular division.

"THE COURT: The motion for a change of judge is denied at this time."

Defendant contends that the right to approve the judge who is going to try him is a fundamental right and any waiver of that right must be measured by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and therefore be knowingly and intelligently made by the defendant himself. We do not agree.

While defendant in a criminal case may be entitled, as a constitutional right, to an impartial (and independent) judge, *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), he is not entitled, as a matter of right, to any particular judge, *Palmore v. United States*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), or a constitutional right to a change of judge. Although the better practice would be for counsel to consult with his client before agreeing to a trial before a particular judge, we concur with the trial judge that this is a decision that can usually be more intelligently made by counsel than the client. We hold that, in the instant case, counsels' agreement to have the matter tried before a particular judge is, absent a showing of actual bias and prejudice resulting in an unfair trial, binding upon the client. We find no error.

### REPRESENTATIVE JURY PANEL

Prior to trial, the defendant objected to the absence of blacks in the jury panel from which the jury was drawn. He consequently asserts that he was denied a fair and impartial trial under the Sixth and Fourteenth Amendments. While criminal defendants are entitled, as a matter of due process, to a jury drawn from a representative cross section of the community, *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), all the Constitution forbids is systematic exclusion of identifiable classes from jury panels and from the juries ultimately drawn from those panels. A de-

fendant may not challenge the makeup of a jury panel merely because no blacks are represented, but most prove that blacks were, in fact, excluded. *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). The defendant here failed to make a prima facie case of such discrimination at the trial level and we cannot consider it on appeal. *State v. Money,* 110 Ariz. 18, 514 P.2d 1014 (1973).

## THE USE OF SHACKLES

■ At the beginning of the trial, the following transpired:

"THE COURT: * * *

I want to speak to the Sheriff's Deputies in the presence of Mr. Reid. Mr. Reid has requested the right to take notes, and it is my understanding, and I may be wrong again, Mr. Reid, I am quoting you, that there will be no objection made to leg irons rather than handcuffs. Is there any problem with that?

"THE DEPUTY SHERIFF: No, Your Honor.

"THE COURT: So he can have his hands to use to take notes?

"THE DEPUTY SHERIFF: We can replace them with leg irons, Your Honor."

Later, during the questioning of the jury the following transpired:

"MR. HAYES: Your Honor, I talked to Mr. Reid briefly here and he has asked me to question. He wants to know why he has to have the shackles on and the handcuffs. He feels that it prejudices him in his case in front of the jury, being brought in front of the jurors in the hall here with the shackles on. I did personally observe that this morning. He has asked me to make a motion in his behalf that he be permitted to not have to wear the shackles or the handcuffs at least while in the courtroom.

"THE DEFENDANT REID: That's right.

"THE COURT: I will consider the matter. I will take it under advisement. I do not make these rulings. I have to consider it with Security in this matter."

It would appear that defendant was kept in leg shackles throughout the remainder of the trial and we find nothing else in the record concerning the shackles which would justify the shackling of the defendant before the jury.

The decision whether to require defendant to be shackled is generally within the sound discretion of the trial court. *State v. Moore,* 110 Ariz. 404, 519 P.2d 1145 (1974). When, however, as here, the defendant objects to being tried in shackles or handcuffs there must be some reason in the record to support such actions. We find no such reasons in the instant record. Absent some compelling reason not contained in the record, we believe it was an abuse of the trial court's discretion to allow the defendant to be shackled during trial before the jury.

"It is the contention of the defendant that he was prejudiced by being manacled or 'handcuffed' before the jury by the Deputy Sheriff who was in charge of his custody. It was a rule at common law that a defendant being tried for a criminal offense had the right to make his appearance in court free from all shackles. Manacling a person when there is no necessity to do so, and bringing him into court in the presence of the jury could not be too strongly condemned. *State v. Randolph,* 99 Ariz. 253, 408 P.2d 397 (1965); *State v. Williams,* 18 Wash. 47, 50 P. 580, 39 L.R.A. 821 (1897); *State v. Coursolle,* 255 Minn. 384, 97 N.W.2d 472, 75 A.L.R.2d 755 (1959). * * *" *State v. Robinson,* 6 Ariz.App. 419, 422, 433 P.2d 70, 73 (1967).

Although we have stated that it was error to continue the shackling over the objections of the defendant without something in the record to justify such action, we do not believe that it mandates reversal. The United States Supreme Court has recognized that "the sight of shackles and gags might have a significant effect on the jury's

feelings about the defendant * * *." *Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353, 359 (1970). But the United States Supreme Court has also indicated that as far as jail clothing is concerned it is not always prejudicial to defendant:

"Consequently, the courts have refused to embrace a mechanical rule vitiating any conviction, regardless of the circumstances, where the accused appeared before the jury in prison garb. Instead, they have recognized that the particular evil proscribed is compelling a defendant, against his will, to be tried in jail attire. The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Estelle v. Williams,* 425 U.S. 501, 507, 96 S.Ct. 1691, 1694–95, 48 L.Ed.2d 126, 132–133 (1976).

The United States Supreme Court in *Estelle v. Williams, supra,* then noted that the harmless error rule has been applied to trials where the defendant is in prison clothes:

"The Fifth Circuit, in this as well as in prior decisions, had not purported to adopt a *per se* rule invalidating all convictions where a defendant had appeared in identifiable prison clothes. That court has held, for instance, that the harmless-error doctrine is applicable to this line of cases. 500 F.2d [206], at 210–212. See also *Thomas v. Beto,* 474 F.2d 981 (CA5), cert. denied, 414 U.S. 871, 94 S.Ct. 95, 38 L.Ed.2d 89 (1973); *Hernandez v. Beto,* 443 F.2d [634], at 637. Other courts are in accord. *Bentley v. Crist,* 469 F.2d [854], at 856; *Watt v. Page,* 452 F.2d 1174, 1176–1177 (CA10 1971), cert. denied, 405 U.S. 1070, 92 S.Ct. 1520, 31 L.Ed.2d 803 (1972)." 425 U.S. at 506, 96 S.Ct. at 1694, 48 L.Ed.2d at 131.

We see no reason why the harmless error rule may not be applied to shackles as well as prison garb.

It is impossible, of course, for this court to ascertain whether the shackles in the instant case generated more sympathy or prejudice for defendant in the minds of the jury. Based on the rest of the evidence before the jury, however, we believe the shackling of the defendant was harmless error beyond a reasonable doubt and does not require reversal. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

### REPRESENTATION BY COUNSEL

Defendant, as an indigent, was appointed counsel by the court. During the proceedings, he made several requests for a different attorney:

"MR. HAYES: Your Honor, Mr. Reid has indicated to me in the jury room out here, where I just had a brief opportunity to talk to him before this hearing, that he didn't want to have me represent him anymore.

"THE COURT: Mr. Reid, you will be given the opportunity to state anything you want at the time set for the hearing on the motion to withdraw, and at that time you can state anything you want. I don't feel this is the appropriate time for that to be done.

"MR. REID: I feel it is the appropriate time in my trial not to proceed under these conditions.

"THE COURT: As I indicated—

"MR. REID: (interrupting) if I don't want him as my attorney he ain't got to be my attorney.

"THE COURT: The Court decides that, I think you realize that Mr. Watson—

"MR. REID: (interrupting) They have to decide that they go ahead on this.

"THE COURT: No. I am not going to decide it, and I am going to go ahead with this at this time.

"MR. REID: How?

"THE COURT: Just by—

"MR. REID: (interrupting) How do I have to accept him as my attorney when I don't want him?

"THE COURT: Because, Mr. Reid, he is appointed by the Court.

"MR. REID: I want to know the reason behind this.

"THE COURT: Very well. If you keep quiet a minute, I will tell you the reason. He is appointed by the Court to represent you.

"MR. REID: When was he appointed? They didn't bring me over here in court when they appointed him. He told me he would send an attorney to talk to me and he come over and talked to me and as things went with the law, he was my attorney but no judge appointed him to me.

"THE COURT: The record shows, and I have gone over it, that he was appointed attorney, and when you have an attorney appointed, Mr. Reid, you don't have the right to pick and choose your attorney. The Court appoints an attorney to do this. Mr. Hayes, in the opinion of this Court, and I am sure all the Courts here, is a very competent attorney that has had a great deal of experience in criminal matters.

"MR. REID: My opinion don't mean nothing then, huh?

"THE COURT: No, sir, other than at the time we have a hearing, if you can raise specific points, then the Court will listen to you at that time.

"MR. REID: Do you want to hear them?

"THE COURT: No. This isn't a trial. Let me explain it to you again. I am going to go ahead with this hearing. If Mr. Hayes is allowed to withdraw as your counsel and another attorney is appointed, then in that event this hearing would have no part of your lawsuit. If he isn't allowed to withdraw, the Court has ruled that this is a proper way.

"MR. REID: Why won't he be allowed to withdraw? I don't want him. What kind of trial is that?

"THE COURT: The Court determines whether he withdraws or not. You don't or he doesn't, the Court does."

The court also appointed a second attorney to assist the first attorney and objections were made by the defendant to the second attorney.

 Defendant contends that the court abused its discretion in failing to grant his various requests for a new attorney. As defendant admits in his brief, a person receiving court appointed counsel is not entitled to have the attorney of his choice. *State v. DeLuna,* 110 Ariz. 497, 520 P.2d 1121 (1974). In this case the request of the defendant came at a time when the granting of the request would have resulted in a delay of the trial. The court refused to appoint new counsel though it did appoint a second attorney to assist in Mr. Reid's defense. We find no error.

### THE WARRANTLESS SEARCH AND PROBABLE CAUSE FOR ISSUANCE OF THE TELEPHONIC WARRANT

Evidence obtained as a result of the search of the apartment at 8570 East Cooper Street was introduced at trial. This same evidence was admitted in the companion case of *State v. Watson,* supra. On appeal, both Reid and Watson raise the same objections to this search and the basis for the search warrant. These objections have been fully considered and rejected in Watson, supra. The search was conducted pursuant to valid consent given by Linda Hagood and the affidavit for the telephonic warrant was sufficient for a finding of probable cause. See *State v. Watson,* supra. We find no error as to the defendant Reid.

### ADMISSION OF PRELIMINARY HEARING TESTIMONY

Defendant argues that the trial court erred in allowing the prosecution to read into evidence the preliminary hearing testimony of Linda Hagood, Jacqueline Knight, and Meredith Brown. This objection was also raised in the companion case of *State v. Watson,* supra. We there held that the State had made a "good faith effort" to obtain the witnesses' presence at trial and

that the admission of the testimony was not error. We reaffirm that holding here.

In addition to the arguments considered in *Watson,* supra, defendant Reid also argues that the State is precluded from establishing a good faith effort to secure the witnesses' appearance due to its failure to invoke the Arizona material witness statutes which read as follows:

"§ 13–1841. Undertaking by witnesses
"If the defendant is held to answer after preliminary hearing, the magistrate may require each material witness for the defendant if so requested by him, to enter into a written undertaking to appear and testify at the trial of the action or to forfeit such amount as the magistrate fixes."

And:

"§ 13–1843. Procedure when witness does not give security
"A. If a witness required to enter into an undertaking to appear to testify either with or without security refuses compliance with the order for that purpose, the magistrate shall commit him to custody until he complies or is legally discharged."

■■■■ There is considerable question whether any of the witnesses would have been able to post sufficient security to insure their appearance. The practical effect of invoking the statute, then, would quite likely have been the incarceration of the three witnesses. A.R.S. § 13–1843. Confinement of a witness, even for a few days, not charged with a crime, is a harsh and oppressive measure which we believe is justified only in the most extreme circumstances. We note also that under A.R.S. § 13–1843(B) and (C), a material witness can be detained for a maximum of three days, and that during those three days the witness may be "conditionally examined" on application of either party. Testimony given on conditional examination

" * * * may be admitted in evidence at the trial under the same conditions and for the same purpose as the testimony of a defendant or witness testifying at a preliminary hearing." A.R.S. § 13–1843(B).

■■■ The use of the material witness statute as urged by defendant would have produced the same ultimate result. We hold that use of the material witness statute is not a prerequisite to proof of a good faith effort on the part of the State to obtain the witnesses' presence at trial.

## THE IDENTIFICATION TESTIMONY

Prior to trial defendant moved to suppress any in-court identification testimony of Eleanor Gallman and Joseph Mascari.

Mrs. Eleanor Gallman, wife of the murder victim, had testified at the preliminary hearing and identified the defendant Reid. At the preliminary hearing she testified that she had been told previously by the county attorney's office that Watson and Reid would be there and she observed the two defendants handcuffed and in jail clothes prior to her identification testimony at the preliminary hearing. She also testified that she had seen a picture of one of the two defendants in a newspaper on the first day after the incident. Mrs. Gallman was cross-examined by the attorneys for Reid as to the basis of her identification. Both at the preliminary hearing and at the trial, her identification of the defendant as one of the men who participated in the robbery was firm and unwavering. Mr. Joseph Mascari did not testify at the preliminary hearing but did testify at the trial.

The defendants filed a motion to suppress the two identifications and asked for an evidentiary hearing on the matter of the identification of the defendant by both Mrs. Gallman and Mr. Mascari.

At the hearing on the motion the following transpired:

"MR. BROGNA: Your Honor, the Defendants have filed a motion to suppress identification, especially as to Mrs. Gallman. I have her down here under subpoena today. It is not my motion but I would like to make an argument at this time that it is not a proper motion.

* * * * * *

"MR. DAVIS: Your Honor, the reason we requested this hearing is particularly the circumstances surrounding the actual identification of these particular clients in this case, our clients. Referring more particularly, the authority for this is the Stovall case, which is a United States Court case. It is our position, true, there was no line-up, but in fact, the first contact that Mrs. Gallman had with the Defendants in this case was at the preliminary hearing. At that point in time certain questions were asked of her when she got on the stand regarding her identification, and it was brought out quite clearly that she was influenced by the fact that our clients were brought in, shackled, similar clothing, and I asked her specifically myself at the preliminary hearing, and the transcript will bear this out, whether or not she had seen any photographs of these people prior to the hearing, and she contradicted herself on several occasions. First she said, no, she did not and then she said, 'I saw photographs in the paper but I paid no attention to them and didn't read the articles' and then she contradicted herself and said she had read the headlines in the articles and saw the photographs. It is our position, Your Honor, that this particular arrangement unfortunately that was occasioned by these articles and by the fact that our clients were paraded in front of her shackled, the same clothing, and the only ones there that were shackled like this, taken into the very courtroom that she was taken to to testify, led her to the identification of these two individuals, and we feel that her identification was tainted in that regard and is the reason that we have made a motion to suppress the identification. * * * "

The court refused to allow a hearing on whether Mrs. Gallman's proposed identification was tainted by pretrial procedures.

The defendant did not pursue the motion to suppress as to the witness Mascari and we will not consider the motion to suppress his identification further.

There was no objection nor request for hearing at the time Mrs. Gallman testified at the trial. However, we have said that a proper motion in limine will preserve the defendant's objection on appeal even though not renewed at trial. *State v. Briggs,* 112 Ariz. 379, 542 P.2d 804 (1975).

We have stated that seeing the defendant at the preliminary hearing, or for that matter the trial, cannot, as a practical matter, be avoided or made less suggestive. *State v. Ware,* 113 Ariz. 340, 554 P.2d 1267, filed 7 September 1976; *State v. Fields,* 104 Ariz. 486, 455 P.2d 964 (1969). This does not mean that when the question is timely raised the court may refuse to conduct a hearing on the possibility that, considering the totality of the circumstances, the pretrial actions have resulted in a tainted trial identification. In the instant case, the witness was told beforehand that she would see the defendants. She did see them shackled prior to her testimony, and the defendant had a right to a hearing to determine if her identification was the result of her observation prior to the preliminary hearing or as a result of the events at the time of the robbery.

The trial court should have held a hearing to determine if the identification by Mrs. Gallman was tainted by pretrial procedures. In other words, did her identification come from the county attorney's suggestion that she would see the defendants in shackles before the preliminary hearing or from her recollection of the events on the night of the crime. We have stated:

"Defendant also suggests that this pretrial confrontation was unduly suggestive and prejudicial and tainted the complaining witnesses' in-court identification. We are unable to determine from the record whether the confrontation was sufficiently suggestive to permit the possibility of misidentification. However, in light of the criteria which we outlined in *Dessureault,* should the defendant object to the in-court identification * * * it is imperative that the trial court, on retrial, hold a hearing in the absence of the jury.

At such a hearing, the burden is on the prosecution to establish by clear and convincing evidence that the pretrial identification was not unduly suggestive. In addition, 'if the trial judge concludes that the circumstances of the pre-trial identification were unduly suggestive or that the prosecution has failed to establish by clear and convincing evidence that they were not, then it is the prosecution's burden to satisfy the trial judge from clear and convincing evidence that the proposed in-court identification is not tainted by the prior identification.' *State v. Dessureault, supra,* 104 Ariz. [380] at 384, 453 P.2d [951] at p. 955. See also *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)." *State v. Lopez,* 105 Ariz. 84, 86, 459 P.2d 517, 519 (1969).

We believe that the trial court should have conducted a factual hearing concerning Mrs. Gallman's identification. Having failed to do so, we must consider whether this failure was harmless. As we stated in *Dessureault,* supra:

"[I]f it can be determined from the record on clear and convincing evidence that the in-court identification was not tainted by the prior identification procedures or from evidence beyond a reasonable doubt that it was harmless, and there is otherwise no error, the conviction will be affirmed." *State v. Dessureault, supra,* 104 Ariz. at 384, 453 P.2d at 955.

The testimony of Mrs. Gallman at the preliminary hearing together with her testimony at trial indicated that the meeting with the county attorney and the observation of the defendants prior to the preliminary hearing did not taint her identification of the defendant.

As a result, we believe any error was harmless beyond a reasonable doubt. *State v. Dessureault, supra; Chapman v. California, supra; Harrington v. California, supra.*

## THE VIDEOTAPED TESTIMONY OF DR. HIRSCH

Prior to trial, the State moved for an order to videotape the testimony of Dr. Louis Hirsch, the coroner's pathologist for Pima County, for admission into evidence at trial. According to the State's memorandum, Dr. Hirsch, the pathologist who examined the body of the deceased, was to be on "extended out-of-country travel during the dates set for trials." The defense filed a written opposition to the State's motion. After hearing, the court granted the motion. The testimony of Dr. Hirsch was videotaped in the courtroom with defendant present and the doctor was cross-examined by defendant's attorney. The trial judge was present and ruled on objections.

Rule 15.3 of the Arizona Rules of Criminal Procedure (1973) reads in part as follows:

"a. *Availability.* Upon motion of any party or a witness, the court may in its discretion order the examination of any person except the defendant upon oral deposition under the following circumstances:

(1) A party shows that the person's testimony is material to the case and that there is a substantial likelihood that he will not be available at the time of trial;"

And subsection (c) of Rule 15.3 states:

"c. *Manner of Taking.* Except as otherwise provided herein or by order of the court, depositions shall be taken in the manner provided in civil actions. * * "

The Rules of Civil Procedure, 16 A.R.S., provide:

"(4) The court may upon motion order that the testimony at a deposition be recorded by other than stenographic means, in which event the order shall designate the manner of recording, preserving, and filing the deposition, and may include other provisions to assure that the recorded testimony will be accurate and trustworthy. If the order is made, a party may nevertheless arrange to have a stenographic transcription made at his own expense." Rule 30(b)(4), Arizona Rules of Civil Procedure, 16 A.R.S.

We feel that Rule 15 of the Arizona Rules of Criminal Procedure (1973), when

read with Rule 30 of the Arizona Rules of Civil Procedure, 16 A.R.S., allows the testimony of a witness to be videotaped and introduced at trial under safeguards as provided by the trial judge. The defendant, however, contends that this procedure violates his Sixth Amendment right to confrontation. We do not agree.

The right to confront a witness at trial has long been recognized as fundamental to the adversary system of justice. It is not only a right of the defendant, but is a benefit to the trier of fact.

"It has been widely recognized, however, that in addition to the benefit which a defendant has in testing the reliability of a witness against him by cross-examination, confrontation ordinarily secures a secondary advantage in making it possible for the tribunal before whom the witness appears to judge from his demeanor the credibility of his evidence. This advantage results, not from the confrontation between the witness and the accused, but from the witness's presence before the tribunal." *Government v. Aquino,* 378 F.2d 540, 547 (3rd Cir. 1967).

And the United States Supreme Court has held that the Sixth Amendment right of an accused to confront the witness against him, as a fundamental right, is obligatory upon the states by the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The court in this and other cases has been most concerned with the testimony at the preliminary hearing being used at the trial of the defendant.

There is, however, a difference between using testimony from a preliminary hearing and a deposition taken for use at the trial under adequate safeguards. As the court in *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), also pointed out:

"A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." 390

U.S. at 725, 88 S.Ct. at 1322, 20 L.Ed.2d at 260.

The purpose of a preliminary hearing is for a determination of probable cause and not for guilt or innocence. Also, the defendant, at the time he cross-examines, does not know whether the witness is to be called later at trial. In the instant case, the deposition was taken under trial conditions and the defendant cross-examined knowing the purpose of the testimony and that the testimony was, in all probability, going to be used at the trial. Both the United States Supreme Court, *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), and this court, *State v. Watson, supra,* allow preliminary hearing testimony to be read into evidence at trial when a witness is unavailable. We believe the procedure used here, under the facts in this case and the nature of Dr. Hirsch's testimony, to be far less offensive to defendant's right to confrontation than testimony from a preliminary hearing. Also, we think that there is even less conflict with the Sixth Amendment right to confrontation when the deposition is used for a purely foundational matter as the Florida Supreme Court did in allowing the videotape testimony of a lab technician to be admitted at trial. *Hutchins v. State,* 286 So.2d 244 (Fla.App., 1973). See also Annotation 60 A.L.R.3d 333.

Although Dr. Hirsch did testify concerning the angle of the bullets, leading to the inference that the victim was shot in the back, his testimony herein was concerned primarily with the cause and time of death which testimony was not seriously questioned but which was a necessary foundation to the establishment of the crime.

The Washington Supreme Court has gone even further in a case wherein a victim was allowed to testify by videotape which was introduced at the trial of the defendant. The victim was an officer on a merchant ship who was robbed on 20 May 1974 and was able to identify the defendant as one of his robbers. Since the ship was leaving shortly, the prosecution, after arrest of the defendant and appointment of counsel, notified the defendant that the victim's testi-

mony would be videotaped the following afternoon, 21 May 1974. The defendant objected that there was insufficient time to prepare for the deposition. Nevertheless, the videotape deposition was held at 4:00 p.m. the afternoon of the 21st with the defendant being present and his attorney cross-examining the victim. The Washington Supreme Court held:

" * * * the deposition satisfied the confrontation clause requirements of the Sixth Amendment to the United States Constitution." *State v. Hewett*, 86 Wash.2d 487, 494, 545 P.2d 1201, 1205 (1976).

While we might not be willing to go as far as the Washington Supreme Court, we feel it indicates that this procedure can, when properly used, satisfy the confrontation clause of the Sixth Amendment.

■ We find no error in allowing Dr. Hirsch to testify by videotape under the appropriate safeguards contained herein. In deciding as we do, we wish to emphasize that our decision might be different were he an eyewitness to the events of the crime. Such a crucial witness should not be lightly excused from attendance at the trial itself. When considering when to allow a witness to testify by videotape in a criminal trial, the trial court must balance the right of the defendant to the right of confrontation and the need of the trier of fact to the additional benefit of having a particular witness testify in person at the trial with the extent of the need for the witness to be away at the time of trial. The treatment by the courts of witnesses has not always resulted in willing and cooperative testimony once witnesses have been compelled to attend court. Because of his professional specialty, Dr. Hirsch, a pathologist, might not be able to go on a vacation without disrupting or postponing trial dates. The right of the defendant to confront the witness against him can also accommodate the convenience of the witness without doing an injustice.

In weighing the right of the defendant and the convenience of the witness, the court may take into consideration the occupation of the witness and the nature of his testimony. If it can be demonstrated that the failure of the witness to be present at trial will prejudice the defendant or the State, the motion should not be granted. Absent a showing of prejudice or lack of good faith, we will rely on the sound discretion of the trial court in granting a motion to present videotaped evidence to the jury.

Under the safeguards required by the trial court, we find no violation of defendant's Sixth Amendment right to confrontation.

## TESTIMONY OF NANCY de MUTH

■ At the trial the following transpired:

"Q What did you do when you heard the shots?

"A I got up. I knew I had to get out of there because I didn't know, so I got up.

"Q Was that person still in your room?

"A I don't know. I looked up and I didn't see anybody so I just pushed open my window and pushed the screen out.

"Q Did you hear anything before you went to the window?

"A A shot and I heard a lot of shots and then I heard my stepfather calling out.

\* \* \* \* \* \*

"MR. HAYES: Your honor, I have a motion that I would like to have heard outside the presence of the jury.

"THE COURT: What kind of a motion?

(The following took place at the Bench of the Court:)

"MR. HAYES: I have received absolutely none of this in my discovery.

"MR. BROGNA: He has received all the police reports. I have no written reports on this person.

"MR. HAYES: About her lying on the bed?

"THE COURT: You may reserve your right to make your motion at a later time.

"MR. HAYES: There is nothing that I have heard about what she said about

her father or stepfather, what he said when she was lying on the bed, and the fact that she saw this man 'when he came right inside the room.

"THE COURT: I don't see any Brady material so far.

"MR. HAYES: I would like to ask for sanctions.

"THE COURT: You may reserve your right to make motions at a later time."

Later, at the hearing on the motion, it became apparent that the county attorney had talked to the witness and made some notes on this particular part of the testimony which he had not made available to the defendant. Our Court of Appeals has stated:

"In addition, it was error for the prosecution not to have disclosed the statements taken from Anna Morrison, a witness. The prosecuting attorney stated that he had taken notes when speaking with the witness. Such notes do not meet the 'work product' exception to disclosure under Rule 15.4(b)(1), 17 A.R.S., as they are not 'theories, opinions and conclusions' of the parties or their agents. To rule otherwise would make a premium out of *not* taking verbatim statements in order to avoid the disclosure required by the rules. However, the disclosure has now been accomplished due to the trial and hence, the matter is moot." *State v. Nunez,* 23 Ariz.App. 462, 463, 534 P.2d 270, 271 (1975).

The withholding of the information, however, does not appear to have been prejudicial, and we do not believe sanctions were required as defendant desired. Refusal to grant a mistrial was not error.

## CUMULATIVE EVIDENCE

Defendant argues that he was denied a fair trial due to the admission into evidence of "[n]umerous, cumulative photographs and fingerprints." We do not agree. The admission of evidence is largely within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Brierly,* 109 Ariz. 310, 509 P.2d 203 (1973).

We have read the record and reviewed the exhibits. We find nothing to indicate that defendant Reid was in any way prejudiced by the introduction of "cumulative" evidence.

## EVIDENCE OF FLIGHT

Evidence of defendant's attempt to escape from the police at the time he and Watson were arrested was introduced into evidence, primarily on the charge of obstructing justice. Defendant contends that since the court granted the defendant's motion for a directed verdict on the obstruction of justice count this testimony was not only inadmissible but prejudicial. We do not agree. Even if the defendant had not been charged with obstructing justice, the admission of his attempted flight would not have been inadmissible. The fact that the defendant attempted to flee from custody at a point remote in time from the actual crime goes to the weight and not to its admissibility. *State v. Wilcynski,* 111 Ariz. 533, 534 P.2d 738 (1975), cert. denied 423 U.S. 873, 96 S.Ct. 141, 46 L.Ed.2d 104 (1975). We find no error.

## EXCESSIVE SENTENCE

The trial court ordered certain portions of the presentence report not to be disclosed to the defendant. In doing so, it stated on the record which portions were being withheld and that the reason for doing so was for "the protection of the people involved." Defendant, without further argument, submits that this constituted a denial of procedural due process.

In the companion case of *State v. Watson, supra,* we held that the specific provisions of A.R.S. § 13–454 relating to sentencing in a first degree murder case, i.e. that only that material necessary for the protection of human life could be withheld and that such material could not be considered in determining the existence of any aggravating or mitigating circumstances, must be compiled with. In the instant case, it would appear from the record that these provisions were followed. Moreover, in

light of the fact that the defendant received the lesser of the two possible sentences (death or life), we can perceive of no prejudice having been suffered by him from the presentence report.

■ Defendant also contends that the other sentences were also excessive. We have said:

> "The legislature has given the trial court broad discretion in sentencing a defendant for a period within the statutory minimum and maximum. Because a defendant appears in person before the trial judge, the trial judge is, in most instances, better able than we to evaluate the defendant and his circumstances and to determine what action will most likely rehabilitate him to constructive activity. (citation omitted) Accordingly, this Court has consistently held that the pronouncing of a sentence is within the sound discretion of the trial court and that we will uphold a sentence if it is within the statutory limits unless there is a clear abuse of discretion. (citations omitted)." *State v. Smith*, 107 Ariz. 218, 219, 484 P.2d 1049, 1050 (1971).

All of the sentences imposed upon the defendant were within the statutory limits. In addition, we have read both the transcript and the probation report and have found nothing therein to indicate that the trial court abused its discretion.

The verdicts, judgments, and sentences are affirmed.

HAYS, HOLOHAN and GORDON, JJ., concurring.

STRUCKMEYER, Vice Chief Justice, dissenting.

I am unable to concur with the majority of the Court in the disposition of this case.

At the onset, two points should be made clear. First, seemingly Dr. Hirsch intended to leave Arizona on a vacation and to be absent from Arizona at the time of the trial. While he was within Arizona's jurisdiction, the prosecution petitioned the Superior Court for its order to permit his testimony to be videotaped. No effort was made by the prosecution to require his personal attendance by subpoena. Indeed, insofar as the record is concerned no plausible reason is suggested why the trial should or could not have taken place either before or after his return. It is therefore abundantly clear that the videotape of his testimony and its subsequent use at the trial against the defendant was solely for the personal convenience of Dr. Hirsch or the court and for no other reason whatsoever.

I consider that the resolution by the majority of the question of the admissibility of Dr. Hirsch's videotaped testimony is constitutionally unsound. Their reliance on the principle that the "trial court must balance the right of the defendant to the right of confrontation and the need of the trier of fact to the additional benefit of having a particular witness testify in person at the trial with the extent of the need for the witness to be away at the time of trial" is unique in the annals of American constitutional law. No authority is cited for such a surprising doctrine. It is diametrically opposed to the repeated holdings of this Court, the Supreme Court of the United States, and the Sixth Amendment right of confrontation. Certainly one can be in sympathy with Dr. Hirsch and his personal desire for a vacation, but concern for the convenience of a witness does not evoke the power to suspend the Constitution of the United States.

Second, it is not Reid's position that videotaped testimony is different from testimony such as that taken at a preliminary hearing or a former trial. Where a transcript of testimony would be admitted under the customary rules of evidence, he does not argue that it should not have been admitted at this trial. The lucid statement of the Florida court in *Hutchins v. Florida* (Fla.App.) 286 So.2d 244, 246 (1973), is apropos:

> "If the previously taken and preserved testimony of the witness, unable to be present was admissible at the trial, it has not been shown how its submission by video tape, as distinguished from a writ-

ten transcription of the questions and answers, resulted in harmful error."

The question here is whether a witness should be required to be present at the trial so that the right of confrontation may be exercised personally in the presence of the jury trying the accused. The most recent statement of this Court was made in 1973 in *State v. Briley*, 109 Ariz. 74, 505 P.2d 245. There, we said:

"Ordinarily, the defendant must be given the opportunity to test the recollection and credibility of the witnesses against him in a face to face encounter before the jury. This Sixth Amendment right of confrontation in the Constitution is essential and fundamental, and has been made obligatory upon the states through the Fourteenth Amendment." (Citations omitted) 109 Ariz. at 75, 505 P.2d at 246.

One of the latest cases of the United States Supreme Court construing a defendant's Sixth Amendment right to confrontation is *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). It deals with the testimony of a witness who testified at a preliminary hearing but who was absent at the trial in these circumstances. Petitioner Barber was charged with robbery in Oklahoma. A co-defendant, Woods, testified at the preliminary hearing incriminating Barber. When Barber was brought to trial, Woods was in a federal penitentiary in Texas, about 225 miles away. No attempt was made by the prosecution to bring Woods to the trial, but, rather, there was introduced a transcript of his testimony taken at the preliminary hearing. The Supreme Court of the United States emphasized that the objective of the confrontation clause of the Sixth Amendment to the Federal Constitution is not only to safeguard the right of the cross-examination, but to prevent depositions from being used against a defendant in place of a personal examination *at which the witness was compelled to stand face to face with the accused and the jurors* to determine whether the witness was worthy of belief.

Traditionally there has been an exception to the requirement of confrontation where a witness is not available through no fault of the prosecution—that is, through death or having fled the jurisdiction. But the exception arises from necessity only. Where, as here and as in *Barber v. Page*, the State made absolutely no effort to obtain the presence of the witness at trial, the use of the substitute evidence cannot be condoned. True, it can be argued, videotape is better than the reading of a deposition or transcript of former testimony, but it is not the same as a personal confrontation. Something important may be lost in the process.

Nor should this defendant's constitutional rights be dependent upon the answer to the question whether Dr. Hirsch was not really an important witness as the majority seem to suggest. In the United States in the past a defendant has had the right to confront his accusers and have the jurors confront them. If this is not to be so, then the time will soon arrive when criminal trials will be conducted by videotaped depositions for it is seldom convenient for the witnesses to be present at the trial.