469 P.2d 481

The STATE of Arizona, Appellee,

v.

Carlos Flores PINA, Appellant.

No. 1 CA–CR 198.

Court of Appeals of Arizona,
Division 1.

May 18, 1970.

Rehearing Denied June 25, 1970.
Review Denied Sept. 22, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Raineri, Raineri & Raineri, by Joseph C. Raineri, Phoenix, for appellant.

KRUCKER, Judge.

Appellant, Carlos Flores Pina, together with Paul Espinoza, was charged with the crime of petit theft in violation of A.R.S. § 13–663, subsec. B and § 13–671, subsec. B, as amended, and with a prior conviction under the provisions of A.R.S. § 13–1649.

Espinoza entered a plea of guilty and Pina a plea of not guilty. Pina was tried before a jury, found guilty, and sentenced to not less than one nor more than two years in the Arizona State Prison. From his conviction and denial of a motion for a new trial, he appeals.

The questions raised on appeal are: (1) Did the court err in denying defendant's motion for a directed verdict? (2) Was it error to refuse admission of defendant's Exhibit No. 3 into evidence? (3) Was the failure to give an instruction on circumstantial evidence error?

Stating the facts briefly, Pina and Espinoza went to a Bayless food market in Pina's automobile, obtained a shopping basket, and put two bottles of whiskey from a shelf in the liquor department into the basket. After going to various other counters in the store, Espinoza put the two bottles of whiskey under his belt, buttoned his coat, and left the store without going through the check-out counter. Pina also left the store at approximately the same time. The assistant manager had observed the defendants and apprehended Espinoza outside the store. Pina took off, but was shortly apprehended by two clerks from the store. It is uncontested that Pina did not carry the whiskey bottles from the market. He claimed that he left the store when he saw Espinoza had the whiskey bottles on his person as he did not want to get into trouble.

At the trial, Pina offered a signed statement, written and executed by Espinoza, to the effect that Pina had nothing to do with the theft but the court refused to admit it into evidence. The testimony of the assistant manager of the store was as follows:

\* \* \* \* \* \*

"Q Have you ever seen the Defendant in this action Carlos Pina before?

A Yes.

Q When was the first time you saw him?

A Around that evening of November 23rd, on that evening.

Q At about what time?

A Approximately 7:30 to 8:00.

Q Now, will you describe what he was doing when you first saw him?

A He and another gentleman came into the store and came through the turnstile, went across the store to the liquor counter and got a shopping cart and proceeded shopping.

Q May I ask you where were you while this was occurring?

A I was at the front of the store.

Q Were you able to see them?

A Yes.

Q Go on, please.

A And this gentleman and another gentleman had a shopping cart and went to the liquor counter, mossied [sic] around the counter then picked up two quarts of Canadian Club liquor and put it in the shopping cart and then went on back to the store and picked up two or three other items which included toilet tissue and towels then they proceeded on across the store through the store to the baby food counter.

Q Where is the baby food counter located?

A It is close to the west side of the store which is also near the west entrance.

Q Now, could you see them from where you stood at that time?

A Yes, I was following them around through the store but staying away from them where they didn't realize that I was watching them.

Q Could you observe them at the baby food counter?

A Yes.

Q What did they do there?

A They looked at several items on the baby food counter and were standing right across together with their shopping cart right beside them and they were facing each other and they picked up the liquor, a bottle at a time, and stuffed it inside the trousers of the other gentleman that was with him and then the other gentleman had a coat on and buttoned his coat up and after they had put the liquor under his belt then they proceeded on with the shopping cart more to the front of the store which is towards the entrance and they pushed the cart aside and went out the front door of the store without going through the check stand.

\* \* \* \* \* \*

Q Did you give them permission to take that liquor out of the store?

A No.

Q Now, which left them—they were out of the store, is that correct? Where were you at that that time?

A I was in the next aisle from the baby food counter between them and the door that they existed [sic] to.

Q What did they do then?

A They went on out of the store, out the door and as they went through the door I went after them and stopped them outside, tried to stop them outside the door and I had quite a time stopping them.

Q What happened then?

A So I knew which one of them had the liquor on him so I grabbed him and got him stopped.

Q What happened, did the other person, the Defendant in this case, did he do anything?

A Yes, he got away from me and run [sic] between the market and another store which is adjacent to the store and run [sic] out through the, well, the aisle-way or hall, whatever you'd want to call it, between the stores and proceeded to cross a field, an open field and I sent two of our boys that were working at the time to come outside and I sent them after him to catch him and they caught him and brought him back."

■ As stated in appellant's opening brief, this court must view the evidence in a light most favorable to the State and resolve all reasonable inferences against the defendant. State v. George, 95 Ariz. 366, 390 P.2d 899 (1964); State v. Bearden, 99 Ariz. 1, 405 P.2d 885 (1965). A review of all of the testimony, and in light of the court's instructions on the subject of being a principal and on flight, we hold that there was ample reason for submitting the case to the jury and that a directed verdict of acquittal would have been improper under all of the circumstances of the case.

■ The appellant claims error in the refusal to admit Espinoza's unsworn statement to the effect that Pina had nothing to do with the theft of the whiskey. This statement, of course, is hearsay and the only question to be decided by this court is whether it comes under an exception to the hearsay rule. Appellant relies upon Deike v. Great Atlantic & Pacific Tea Company, 3 Ariz.App. 430, 415 P.2d 145 (1966), in which decision Judge Stevens very ably discusses the requirements for such a statement to fall within an exception to the hearsay rule:

"The fundamental rationale of the admission of a declaration against interest, on the part of a third person, is that under the particular circumstances the statement is trustworthy, that is, that safeguards reasonably equivalent to an oath and the test of cross-examination exists. Wigmore § 1457. According to Wigmore in § 1457:

'The basis of the Exception is the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently sanctioned, though oath and cross-examinations are wanting.'

This requirement has been termed a 'circumstantial probability of trustworthiness' by Wigmore. Courts have been almost unanimous in stating that only a pecuniary or proprietary interest in the declarant will suffice for this exception. * * * On principle, the exception for declarations against interest would admit declarations contrary to any kind of interest of sufficient importance to a declarant to promote his telling the truth. Penal interest is certainly as important to a person as pecuniary or proprietary interest and would appear to be an equal stimuli to telling the truth or a deterrent to false statements. * * * While the prevailing rule limits admissibility to declarations against pecuniary or propriety interest we subscribe to the holdings in a minority of jurisdictions, that a declaration against penal interest is no less trustworthy.

However, in the present case we are unable to find sufficient circumstantial probability of trustworthiness surrounding [witness's] declaration to justify its admission in evidence as a declaration against interest.

* * * Nor is the statement attempted to be introduced to the prejudice of the declarant or declarant's interest. Plaintiff offered [witness's] declaration as proof of the appellant's civil liability. This Court has been unable to find authority for the proposition, argued by appellee, that a third party's declaration criminally implicating another person is admissible against that other person in a civil action as a declaration against in-

terest. * * *" 3 Ariz.App. at 432–433, 415 P.2d at 147–148.

In the case before us, Espinoza had already plead guilty, and we find that the necessary elements to bring this case within the exception are not present. Appellant relies upon Cameron v. State, 153 Tex. Crim. 29, 217 S.W.2d 23 (1949), in which the court refused a written statement of another person for the following reason:

"The rule controlling appears to be that the declarations of a third party admitting his guilt of the crime for which the accused is upon trial are admissible when the State is relying solely upon circumstantial evidence, when the guilt of such party is inconsistent with the guilt of the accused, and when the facts show that such party was so situated that he might have committed the crime. * * *" 217 S.W.2d at 24.

■■ The next point claimed as error is the failure of the court to instruct the jury on circumstantial evidence. This point is raised for the first time on appeal. Appellant relies upon State v. Tigue, 95 Ariz. 45, 386 P.2d 402 (1963). It is true that the refusal of a circumstantial evidence instruction may be error, and it is also true that it is the duty of the trial court to instruct upon the subject of circumstantial evidence where the State's proof consists solely of circumstantial evidence. However, as stated in *Tigue*, supra, and in State v. Daymus, 90 Ariz. 294, 367 P.2d 647 (1961), this rule applies only where the prosecution must rely solely on circumstantial evidence to convict. In the case before us, there is ample direct evidence upon which the defendant could have been found guilty by the jury.

For the reasons stated, judgment is affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.