544 P.2d 1084

**STATE of Arizona, Appellee,**

v.

**William Wayne MACUMBER, Appellant.**

**No. 3122.**

Supreme Court of Arizona,
En Banc.

Jan. 13, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Frank T. Galati, Asst. Atty. Gen., Phoenix, for appellee.

James Hamilton Kemper, Phoenix, for appellant.

HAYS, Justice.

William Wayne Macumber was found guilty of two counts of first degree murder. He was sentenced to serve two concurrent terms of life imprisonment, and now appeals. This court has jurisdiction pursuant to article 2, section 24 and article 6, section 5 of the Arizona Constitution and ARS § 12–120.01.

The appellant first contends that the trial judge erred in excluding Charles M. Byers from testifying as an expert witness. A critical item of evidence linking Macumber to the murders was the fact that shell casings found at the scene allegedly were marked in being discharged from the murder weapon by an ejector like that in the .45 calibre semiautomatic pistol possessed by the appellant. The testimony of Byers was offered by the defense to counter the testimony of a prosecution witness who had said that the shells could only have been fired by that one pistol. The trial judge did not find Byers sufficiently qualified to be able to give an expert opinion and refused to allow his testimony into evidence.

The question of the competency of a witness to testify as an expert is a matter within the sound discretion of the trial judge. *Board of Regents of University and State Colleges of Arizona v. Cannon*, 86 Ariz. 176, 342 P.2d 207 (1959). However, the trial judge was in error in excluding the testimony of Byers.

An expert is one whose opinions depend upon special knowledge with which he can assist the jury. *Board of Regents v. Cannon, supra.* He need not be a professional, but may be a lay person who has special knowledge superior to men in general through actual experience or careful study. *Board of Regents v. Cannon, supra.* He need not have the highest degree of skill or knowledge, but that lack of degree goes to the weight of his testimony before the trier of fact and not to admissibility.

*City of Phoenix v. Brown,* 88 Ariz. 60, 352 P.2d 754 (1960); Udall, *Arizona Law of Evidence,* § 23.

Byers did not compare the ejector markings on the shell casings with the pistol as one who in the course of his profession makes such examinations. In fact, he had not made such comparisons of markings prior to this case. In contrast, the prosecution witness was a special agent of the Federal Bureau of Investigation Firearms Identification Unit. However, Byers certainly possessed far greater knowledge and skill in firearms identification than men in general. Unlike the proposed expert witnesses on the subject of ballistics in *State v. Seebold,* 111 Ariz. 423, 531 P.2d 1130 (1975), who possessed only a more than common interest in weapons, Byers possessed a university degree in chemistry and had informally studied with an undisputed expert on the subject of firearms identification. He had been employed at length by two noted manufacturers of weapons as an engineer designing and producing rifles and ammunition, and later became president of a company which, among its contracts, designed and produced .45 calibre automatic pistol ammunition. Byers also had published four articles concerning firearms.

A person need not be expert in a detailed aspect of a specialized area of knowledge; it is sufficient if he can be qualified as expert in that specialty. It was therefore sufficient that Byers qualified as an expert in firearms identification without having qualified as a specialist in the comparison of ejector markings. During the course of this case, he was able to form an opinion as to the comparison of ejector markings based on his study of firearms identification in general. His opinion was contrary to the expert testimony of the prosecution. He should have been allowed to testify and to offer his opinion.

At trial, it was alleged that another individual had confessed to the crime for which Macumber was being tried. This confession had been made to two attorneys who were willing to testify at the trial of the appellant, the person said to have confessed having died. The court refused the evidence finding, *sua sponte,* that it was privileged.

ARS § 13–1802 provides that an attorney shall not be examined as to any communication made to him by his client without the consent of his client. The privilege is that of the client and only he or someone authorized by law to do so on his behalf may claim it. *State v. Gause,* 107 Ariz. 491, 489 P.2d 830 (1971), *vacated on other grounds,* 409 U.S. 815, 93 S.Ct. 192, 34 L.Ed.2d 71. However, in the absence of the privileged individual, the privilege may be asserted by another including the trial court itself. *McCormick's Handbook of the Law of Evidence* (Cleary, 2nd ed. 1972), § 92.

The privilege does not terminate with death. Udall, *supra,* at § 91; McCormick, *Evidence* (1954), § 98. It has been commonly suspended only in cases where the communication would be logically thought to further the interests of the deceased such as a will, Udall, *supra,* McCormick, *supra,* or where a person normally able by statute to invoke the privilege for another does so to exclude evidence in a prosecution for a crime against that person. *State v. Gause, supra.*

The attorney-client privilege is statutory and an attorney is not allowed to waive the privilege under the circumstances of this case. The legislature has presumably weighed the possibility of hampering justice in originally providing for the privilege. *See State v. Alexander,* 108 Ariz. 556, 503 P.2d 777 (1972).

Macumber consented to the entry of his home by the police to seize his pistol. However, a motion to suppress was made during the proceedings contending that the consent was only intended if a friend of Macumber's accompanied the police. There was testimony to the effect that the

friend did not go with the police and that Macumber had intended that he would.

■■■ The rule is that it is unreasonable to search a home without a search warrant unless consent is obtained absent circumstances not at issue in this case. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The prosecution bears the burden of proving consent. *Schneckloth v. Bustamonte, supra.* There is testimony that supports the prosecution's position that Macumber did not condition his consent to the search. Furthermore, Macumber signed a consent to search document without this proviso.

■■■ There is substantial evidence from which the trial court could have concluded that Macumber's consent to the search as it was conducted was completely voluntary in all respects, and we will not disturb its finding on appeal. *State v. Sherron,* 105 Ariz. 277, 463 P.2d 533 (1970).

Other issues raised by the appellant need not be discussed in light of the following disposition of the case.

The judgment is reversed and the cause remanded for a new trial.

STRUCKMEYER, V. C. J., and GORDON, J., concur.

HOLOHAN, Justice (specially concurring).

I am in agreement with the decision of the majority to reverse the conviction of the defendant and remand for a new trial. Regretfully, I cannot agree with the decision of the majority to refuse to admit evidence of the confession by a third person that he killed the same individuals that the defendant is charged with murdering.

The nature of the defense evidence was contained in an offer of proof. Essentially, the evidence was expected to show that a third person, now deceased, had admitted in 1968 to two attorneys that he had committed the dual murders with which the defendant was charged. At the time of the admission the third person was being tried in federal court for an unrelated murder which occurred in the same general vicinity as the murders in this case. The two lawyers were involved in the defense of the third party for the unrelated murder. Subsequently the third party died.

When the attorneys learned that the defendant was being charged with the murders which their former client claimed to have committed, they sought and received an informal opinion from the Committee on Ethics of the State Bar which advised the attorneys that the privilege of attorney-client did not apply to prevent them from disclosing the information to the defense, prosecution, and court. The attorneys, upon receiving the advise of the Ethics Committee, disclosed their information to the defense and prosecution, but the trial judge ruled the information privileged and not admissible.

The information which the attorneys possess is material and relevant to the defense, and while it was excluded solely on the basis of the attorney-client privilege, it is necessary to examine whether the evidence would have been inadmissible on other grounds. Historically, out-of-court confessions of third persons of crimes tending to exonerate the accused have been excluded from the declaration-against-interest hearsay exception. *See, e. g., Donnelly v. United States,* 228 U.S. 243, 33 S. Ct. 449, 57 L.Ed. 820 (1913); *Davis v. Commonwealth,* 23 S.W. 585 (Ky.1893); *People v. Hall,* 30 P. 7 (Cal.1892). However, relying on the dissent in *Donnelly, supra,* (Holmes, J.) a substantial number of states have abandoned this rule in criminal cases. *See, e. g., People v. Spriggs,* 60 Cal.2d 868, 36 Cal.Rptr. 841, 389 P.2d 377 (1964) (Traynor, J.); *People v. Lettrich,* 413 Ill. 172, 108 N.E.2d 488 (1952); *People v. Brown,* 26 N.Y.2d 88, 308 N.Y.S.2d 825, 257 N.E.2d 16 (1970); *Hines v. Commonwealth,* 136 Va. 728, 117 S.E. 843 (1923). Our Court of Appeals, in *Deike v. Great Atlantic & Pacific Tea Company,* 3 Ariz.App. 430, 415 P.2d 145 (1966) recognized that a declaration against penal in-

terest does fall within the declaration-against-interest hearsay exception, although in that case it was only called upon to rule upon it in a civil action. In *State v. Pina,* 12 Ariz.App. 247, 469 P.2d 481 (1970) our Court of Appeals recognized the applicability of the declaration-against-penal-interest exception to the hearsay rule in a criminal case but noted that the facts in that case did not show sufficient circumstantial probability of trustworthiness surrounding the declaration to justify its admission into evidence.

Although this Court has not specifically ruled on the extent of the hearsay exception, it must be acknowledged that the decisions of our Court of Appeals have declared the rule in Arizona to be that the declaration-against-interest exception includes declarations against penal interest. In addition, and more fundamentally, the United States Supreme Court in *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), has ruled that it is a violation of due process for a state rule of evidence to preclude the admission of reliable hearsay declarations against penal interest when such evidence is offered to show the innocence of an accused. Thus, the offered evidence of the declarations against penal interest in this case were admissible under both Arizona and Federal standards.

Although the offered testimony should have been admissible under the hearsay exception, the trial court refused to admit it on the grounds that the subject matter was privileged. As the majority point out, the attorney-client privilege has been held to survive the death of the client. Whether the rule should be followed in a case such as this or an exception created would require an extended discussion not called for in a specially concurring opinion. The real problem is whether the privilege can survive the constitutional test of due process.

It is basic that an accused has the right to present a defense to a criminal charge, and, to accomplish this right, the accused has the right to compel the attendance of witnesses and the right to present their testimony. *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Even a claim of privilege may have to give way when faced with the necessity by the accused to present a defense. *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The problem of balancing competing interests, privilege versus a proper defense, is a difficult one, but the balance always weighs in favor of achieving a fair determination of the cause.

A state's rules of evidence cannot deny an accused's right to present a proper defense. *Chambers v. Mississippi, supra.* In the case at issue the interest to be protected by the privilege would seem to be at an end because of the client's death.

When the client died there was no chance of prosecution for other crimes, and any privilege is merely a matter of property interest. Opposed to the property interest of the deceased client is the vital interest of the accused in this case in defending himself against the charge of first degree murder. When the interests are weighed, I believe that the constitutional right of the accused to present a defense should prevail over the property interest of a deceased client in keeping his disclosures private. I would allow the defendant to offer the testimony of the attorneys concerning the confession of their deceased client.

CAMERON, C. J., concurs.