582 P.2d 162

**STATE of Arizona, Appellee,**

v.

**William Wayne MACUMBER, Appellant.**

**No. 3122-2.**

Supreme Court of Arizona,
En Banc.

June 9, 1978.
Rehearing Denied July 18, 1978.

**518**

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III and Gregory A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Paul J. Prato and Bedford Douglass, Jr., Deputy Public Defenders, Phoenix, for appellant.

HAYS, Justice.

On September 18, 1974 appellant was charged by information with two counts of first degree murder. Thereafter, he was found guilty by a jury on both counts, and he appealed to the Arizona Supreme Court. The original convictions were reversed. *See State v. Macumber*, 112 Ariz. 569, 544 P.2d 1084 (1976). At the second trial he was again convicted on both counts. This appeal is from the second convictions.

On the morning of May 24, 1962 two bodies were discovered in the desert north of Bell Road and east of Scottsdale Road in Maricopa County, Arizona. The bodies were later identified as Joyce Sterrenberg and Timothy McKillop. The bodies were lying next to an automobile owned by Joyce and in close proximity were found four expended .45-caliber shell casings and one live .45-caliber round. The automobile located at the scene was examined for fingerprints and some prints were lifted from the vehicle.

Investigation determined that Joyce and Timothy were approximately 20 years of age and were engaged to be married. In the early evening of March 23, 1962, they left the Sterrenberg residence in Joyce's car. Trial testimony indicated that the vehicle was seen at a service station on Scottsdale Road where gas was purchased and that thereafter the couple visited some model homes located at 32nd Street and Northern. Despite an extensive investigation, no substantial leads were developed.

Some twelve years after the death of the two victims, on August 23, 1974, Carol Macumber, the wife of the appellant Macumber, came to the sheriff's deputies with the information that appellant had made certain admissions to her regarding the alleged murders. Carol's statement was taken and a few days thereafter, after being apprised of his rights, appellant was confronted with his wife's statement. In essence, Macumber admitted that he had told his wife that he had killed the two victims.

It was later developed that appellant's palm print matched a print lifted from the chrome strip on the door of the car belonging to Joyce Sterrenberg. Appellant's 45-caliber gun was tested and the ejector markings were found to be identical with the markings on the shells found at the murder scene.

The defense at trial emphasized the fact that appellant and his wife in 1973 had been active in a volunteer search and rescue unit associated with the sheriff's office and had attended night courses in police science. Appellant's counsel brought out the fact that the wife Carol had thereafter been employed by the sheriff's office as a clerk, and that she and appellant during this time were having marital difficulties. These difficulties caused Carol to move out in June of 1974 and to ultimately divorce appellant in April of 1975.

It would appear from the cross-examination of Carol and the defense witnesses presented that the main thrust of the appellant's case was to discredit the prosecution's hard evidence by implying that Carol and/or other members of the sheriff's office

had tampered with the evidence, and had indeed "framed" the appellant who, by the testimony of character witnesses, was a fine law-abiding citizen.

Appellant in this appeal has raised the following issues:

I. DESTRUCTION OF DEPARTMENTAL REPORTS AND NOTES BY THE SHERIFF'S OFFICE DENIED APPELLANT A FAIR TRIAL AS GUARANTEED BY THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION.

II. THE TRIAL COURT'S REFUSAL TO PERMIT APPELLANT TO PRESENT THE TESTIMONY OF DR. MAIER TUCHLER DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS.

III. THE TRIAL COURT'S REFUSAL TO PERMIT ERNEST VALENZUELA'S PREVIOUS ATTORNEYS TO TESTIFY REGARDING VALENZUELA'S CONFESSION TO THEM REGARDING THE HOMICIDES DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS.

IV. THE TRIAL COURT ERRED IN ADMITTING EXHIBITS 28 AND 29 (THE SHELL CASINGS FOUND AT THE SCENE).

V. IMPOSITION OF CONSECUTIVE SENTENCES DENIED APPELLANT DUE PROCESS OF LAW.

VI. THE SENTENCE IMPOSED UNLAWFULLY FAILED TO CREDIT APPELLANT WITH TIME SERVED ON THE PREVIOUS CONVICTION.

VII. REFUSAL TO GRANT APPELLANT'S MOTION FOR CHANGE OF JUDGE WAS ERROR.

VIII. THE TRIAL COURT ERRONEOUSLY FAILED TO MAKE AVAILABLE TO DEFENSE COUNSEL CERTAIN MEDICAL RECORDS OF THE JUROR, LYNN JOHNS.

IX. THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT'S MOTION FOR NEW TRIAL AND MOTION TO VACATE JUDGMENT BASED UPON NEWLY DISCOVERED EVIDENCE.

I.

■ On the issue of destruction of departmental reports and notes, appellant paints with a broad brush, for "departmental reports and notes" covers the whole spectrum of an investigation. Does it include every note of a telephone call whether coherent or only remotely related to the investigation? Does it include reports of leads over a period of 12 years which in the investigator's opinion ended up in blind alleys and are valueless? In *State v. Maloney*, 105 Ariz. 348, 464 P.2d 793 (1970), we met this issue saying:

"It would be comfortable if a comprehensive formula could be devised to determine when the fairness of a trial is violated by withholding or destroying evidence which is, or may be, exculpatory. An examination of the authorities, however, dictates the obvious observation that courts must look to the circumstances of the particular case in reaching a decision." 105 Ariz. at 351, 464 P.2d at 796.

Earlier in *State v. Maloney, supra,* the court indicated that a defendant's speculation as to how some items might have given him aid and comfort is not persuasive. The trial judge here was informed as to appellant's position on certain allegedly destroyed evidence and found it did not affect the fairness of the trial. We concur.

The Court of Appeals in *State v. Brewer*, 26 Ariz.App. 408, 549 P.2d 188 (1976) (review by this court denied), discussed an argument on appeal which is virtually the same as the issue here. In summing up its position, the court said:

·"Thus *Bryant*,[1] *Henry*[2] and *Maloney*[3] all hold that there is no violation of the defendant's constitutional rights unless the government willfully or negligently destroys evidence that would have been favorable to the defendant's case. The defendant has not shown that in this instance the state either willfully or negligently destroyed the tapes in question. Moreover, there has no proof that such tapes were crucial to show defendant's innocence." (footnotes ours) 26 Ariz.App. at 416, 549 P.2d at 196.

The defense in this case goes well beyond the usual loss or destruction of evidence issue. Since one of the major contentions by appellant was that destruction of evidence was a part of the conspiracy against him, this issue was weighed and considered by the jury after they were properly instructed as to how to treat the allegedly missing evidence.[4] By its guilty verdicts the jury found against the appellant on this issue.

An examination of the record indicates that a description of the evidence allegedly destroyed is based on conjecture, albeit plausibly put together, but nevertheless conjecture. The usefulness of this evidence to appellant is demonstrated by inventive speculation, but speculation nonetheless. The issue of the state's bad faith was tried by both judge and jury; this should suffice. *State v. Brewer, supra. See also United States v. Heiden*, 508 F.2d 898 (9th Cir. 1974), and *United States v. Henry*, 487 F.2d 912 (9th Cir. 1973).

## II. & III.

It appears more expedient to address together the issues concerning the exclusion of the testimony of the doctor and attorneys.

At the conclusion of the state's case, the court dismissed the jury in anticipation of a defense motion for a directed verdict. Counsel for the appellant requested that the court first consider two preliminary matters; the first pertaining to Ernest Valenzuela, now deceased. As to this matter the county attorney interposed an objection and referred the court to the previous trial and this court's ruling on the matter. *State v. Macumber, supra*. The court at the time the objection was asserted and subsequently in the proceedings indicated a concern that all of the evidence to support appellant's position be preserved by a hearing thereon. The judge indicated some difficulty in applying the ruling of the previous case which was submitted on the limited facts of an offer of proof. He indicated that a full hearing would be held.

The first witness called was Nina Reems, the mother of Valenzuela, who was questioned as to her waiver of the attorney-client privilege which would permit a former attorney for her son to testify as to an alleged confession to the murders of Sterrenberg and McKillop. Mrs. Reems was a Maricopa Indian with an apparently limited grasp of the English language. However, she did say that she would waive the privilege on behalf of her son.

Dr. Maier Tuchler, a psychiatrist, was called as a witness and he testified that he saw Valenzuela on August 14, 1964 at the request of the sheriff. Valenzuela made dreamy, vague statements about the Sterrenberg-McKillop murders. The doctor's attempt to pin down the details of the murders was wholly unsuccessful—fantasy instead of facts. Dr. Tuchler's opinion was that Valenzuela had not committed the murders.

Another witness was the attorney to whom Valenzuela had allegedly confessed. The passage of time and the loss or destruc-

1. *United States v. Bryant*, 142 U.S.App.D.C. 132, 439 F.2d 642 (1971).

2. *United States v. Henry*, 487 F.2d 912 (9th Cir. 1973).

3. *State v. Maloney, supra.*

4. The instruction given was: "If you find that the state has destroyed or lost, caused to be destroyed or lost, or allowed to be destroyed or lost, any evidence whose content or quality are in issue, you may infer that the true fact is against the state's interest."

tion of some notes, records, or tapes left the attorney with few specific recollections. The attorney indicated that the murder confession was simply a passing comment as he and his client were concerned with the defense of another wholly unrelated charge. The only detail given was Valenzuela's statement, "one was running. I shot him like a rabbit." This statement seems considerably at odds with the physical evidence developed by the state's witnesses.

Another attorney of Valenzuela's, who succeeded the one who previously testified, was called next. He indicated that Valenzuela told him that he killed a couple in North Scottsdale in 1962. This occurred in a conference and again when Valenzuela was being administered sodium pentothal. There were no details that the attorney could remember.

As a final witness in the hearing on the Valenzuela confession, the defense called Dr. Leo Rubinow, a psychiatrist, who administered sodium pentothal to Valenzuela in an interview in 1968 which was referred to by the previous witness. The doctor recalled none of the details of the interview and his notes thereon had been destroyed in 1971. He characterized the interview as successful.

At the conclusion of the hearing, the court indicated "that the testimony of the witnesses relating to statements made by Valenzuela lack sufficient circumstantial probability of trustworthiness surrounding those declarations to justify their admission into evidence."

▮ Admission of evidence is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Reid*, 114 Ariz. 16, 559 P.2d 136 (1976); *State v. Brierly*, 109 Ariz. 310, 509 P.2d 203 (1973). The necessity for again discussing the attorney-client privilege is obviated by the court's ruling which is supported by the record. The same reasoning applies to the issue of the doctor-patient privilege. The specially concurring opinion in *State v. Macumber, supra*, says:

"In *State v. Pina*, 12 Ariz.App. 247, 469 P.2d 481 (1970) our Court of Appeals rec-

ognized the applicability of the declaration-against-penal-interest exception to the hearsay rule in a criminal case but *noted that the facts in that case did not show sufficient circumstantial probability of trustworthiness surrounding the declaration to justify its admission into evidence.*" (Emphasis added). 544 P.2d at 1088.

We believe the foregoing to be a correct statement of the law and we hold that it was properly applied by the trial court under the facts. *See also* Rule 804(b)(3) Arizona Rules of Evidence.

### IV.

Appellant contends that two exhibits, 28 and 29, were neither properly identified nor was there established an adequate chain of possession. Deputy Sheriff Watson had picked up the shells at the scene and they had been placed in jars with a slip of paper in Watson's handwriting stating the identifying information. The shells in exhibit 29 had the initials of Watson, "JW", scratched inside. The firearms expert, Siber, testified that three shells in exhibits 28 and 29 had been fired by Macumber's gun.

It is urged that because Watson had not retained custody of the exhibits, and had in fact left the sheriff's office in December of 1968, the state had failed to establish a chain of custody. Therefore, it is argued that Watson's testimony must identify the shells so positively as to refute the appellant's theory of "frame up." The trial court admitted the exhibits in the face of this argument.

▮ As we have previously stated in this opinion, admission of evidence is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Reid, supra.* It is unnecessary to show that there is no possibility that the evidence was tampered with. *State v. Hodges*, 109 Ariz. 196, 507 P.2d 121 (1973). A foundation for its introduction may be laid *either* through identification testimony *or* by establishing a chain of custody; to require both would be unnecessary

**522**

and would not ensure a fairer trial to the accused. *State v. Rascon*, 97 Ariz. 336, 400 P.2d 330 (1965).

At trial, Watson, after examining the exhibits, testified they appeared substantially the same as when he collected them on the desert. He also identified his initials on the shell in exhibit 29 and the handwriting on the slips of paper taken from the jars. With the foregoing, a prima facie showing of admissibility was made. *See State v. Davis*, 110 Ariz. 51, 514 P.2d 1239 (1973).

Appellant, in keeping with his defense theory of conspiracy, urges that this is not sufficient because he has raised an issue of tampering. The appellant attempted to support the issue by cross-examination of the witness Watson. We find in the testimony, however, no hard evidence which would support a finding that the trial court abused its discretion. *State v. Reid, supra.* The Ninth Circuit Court of Appeals in *United States v. Godoy*, 528 F.2d 281 (9th Cir. 1975), a case arising in Arizona, said:

> "Godoy further contends that since a number of government employees had access to the safes in which the pills were stored in Tucson and Dallas, the government must make some showing that these employees did not meddle with the contents of the safes. In ruling on admissibility, however, the court may assume, absent evidence to the contrary, that public officials have properly executed their duties and no additional showing to this effect is required. (citation omitted)" 528 F.2d at 283–84.

There is no "evidence to the contrary" here. As we said in *State v. Ritchey*, 107 Ariz. 552, 490 P.2d 558 (1971):

> "Under such circumstances, unless a defendant can offer proof of actual change in the evidence, or show that the evidence has, indeed, been tampered with, such evidence will be admissible." 490 P.2d at 563.

### V.

After appellant's first conviction, he was sentenced to life imprisonment on each of the counts, to run concurrently. After his convictions in the recent trial, he was again given a life sentence on each of the counts, to run consecutively. Appellant contends that this more severe sentence is illegal as contrary to *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

17 A.R.S. Rules of Criminal Procedure, rule 26.14, provides:

> "Where a judgment or sentence, or both, have been set aside on appeal, by collateral attack or on a post-trial motion, the court may not impose a sentence for the same offense, or a different offense based on the same conduct, which is more severe than the prior sentence unless it concludes, on the basis of evidence concerning conduct by the defendant occurring after the original sentencing proceeding, that the prior sentence is inappropriate."

The main thrust of *North Carolina v. Pearce, supra*, is that due process of law requires that a defendant should not be punished for asserting his right to an appeal. The Arizona rule is in accord with the ruling in *Pearce*. We are faced with the issue of whether here there are valid grounds for the tougher sentence. As provided by *Pearce*, the trial court, at a hearing to modify the sentence, stated its reasons for the sentence as follows:

> "The second ground is that in the first trial, the defendant basically had a defense of lask [sic] of proof. The second trial, sharpened up the defense and instead of lacking of proof as a shield, came on with a story which accused Mrs. Macumber and the Maricopa County Sheriff'f [sic] office of conspiring and perjuring themselves for the purpose of convicting the defendant.
>
> "He went on the defensive with his sword to attack them rather simply putting the State to it's [sic] proof. I feel that those facts justify on the second sentencing at this time, consecutive sentences relating to two counts of murder."

■ We hold that it is not a sufficient ground to impose a harsher sentence because appellant asserts a new aggressive affirmative defense in the retrial. The mere assertion of this defense, obviously with the advice and concurrence of counsel, does not show baser mental and moral propensities than were previously before the court on initial sentencing.

It is ordered that the sentences be served concurrently. A.R.S. § 13–1717(A).

### VI.

■ After sentencing appellant to consecutive terms of life imprisonment, the trial court modified the sentence on Count 1 to credit appellant with all time already served as a result of the previous conviction. Appellant alleges that the trial court erred in not similarly giving credit for time served against the sentence on Count 2. Our holding that appellant will serve the two sentences concurrently has rendered this issue moot, since appellant will receive credit against both sentences under the trial court's modified sentence on Count 1.

### VII.

■ The appellant moved for a change of judge pursuant to Rule 10.1(a) of the Rules of Criminal Procedure. A hearing on this motion was set before a different judge, who denied the motion. Having read the record, we find no reason to overturn the trial court's ruling. *State ex rel. Riley v. Collins*, 7 Ariz.App. 36, 435 P.2d 871 (1968).

### VIII.

As a part of his motion for new trial, appellant urged that one of the jurors, Lynn Johns, was intoxicated on heavy medication during the jury's deliberations. At least two of the jurors, when called to testify in a hearing on the matter, indicated that Mrs. Johns experienced mood changes and on occasion cried. Other members of the jury testified that Mrs. Johns did not appear to be intoxicated by reason of her medication. The juror's treating doctor gave testimony as to the medication prescribed, the dosages, and the underlying medical problems. Mrs. Johns herself denied any incapacity during the trial or the deliberations.

■ The defense called a psychiatrist who indicated he needed the juror's medical records in order to render an opinion on the matter. The doctor-patient privilege was asserted by the juror. Appellant requested the court to order the production of the records, and the request was denied. Appellant asserts that the rationale of *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), requires that the privilege give way to the rights of the accused. We find such an extension of *Chambers, supra,* unwarranted under the facts of this case.

■ The trial judge correctly denied the motion for new trial based on juror intoxication. The record supports the conclusion that Mrs. Johns was not intoxicated by her medication.

### IX.

■ As his final issue, appellant contends that his motion for new trial and motion to vacate judgment based on newly discovered evidence should have been granted. This is founded on two items: 1) the testimony of Josephine Wallace and, 2) testimony of witnesses concerning a desert party which took place in the vicinity of the murder scene the night of the murder.

A hearing was held on both of these items and the testimony of witnesses was received. The witness, Josephine Wallace, after reading about the trial, came forward with the testimony that she and her husband were operating a Dairy Queen on the night of the murder and saw the victims in the Dairy Queen near 11:00 that evening. This was contradicted by the departmental reports which seem to negate her testimony of previously identifying pictures of the victims.

The court said in ruling:

"I can conclude that had Mrs. Wallace's testimony in its present form been

brought to the jury, that there is no probability that it would have changed the verdict if introduced in evidence."

The second item concerned a group of people who went on a steak fry in the desert. Two witnesses were called who testified that during the evening they heard no gunshots in the time span between 7:30 and 11:30, leaving the inference that the murders were committed at a later time. The defense conducted tests in an attempt to duplicate conditions and there was testimony that the shots were easily heard. The state called two witnesses; one, a member of the steak fry party who did hear shots that evening. The trial court again ruled that none of the testimony, if heard by the jury, would affect the verdict.

Under the requirements of 17 A.R.S. Rules of Criminal Procedure, rule 24.1, rule 24.2.a(2) and rule 32.1.e(1), the trial court here properly considered

> "[t]he probability that such facts, if introduced would have changed the verdict, finding, or sentence; . . ." Rule 32.-1.e(1).

He concluded that neither item of evidence would have done so. In *State v. McAvaney*, 106 Ariz. 149, 472 P.2d 18 (1970), we similarly reviewed a trial court's ruling on a motion for new trial based on grounds of newly discovered evidence. It was there held that we will not interfere with the trial court's exercise of its discretion in the matter of granting a new trial unless there was an abuse of discretion. We find no such abuse here.

Judgments of conviction affirmed, sentences modified and affirmed as modified.

· CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN, and GORDON, JJ., concurring.