594 P.2d 510

**Rosemary ENGLEHART, Appellant,**

v.

**JEEP CORPORATION, a Nevada Corporation, American Motors Sales Corporation, a Delaware Corporation, and Galloway Motors, an Arizona Corporation, Appellees.**

**No. 13829–PR.**

Supreme Court of Arizona, In Banc.

April 3, 1979.

Rehearing Denied May 8, 1979.

Renaud, Cook & Videan by James M. Videan, Phoenix, for appellant.

Everett, Bury & Moeller by Leonard Everett, Tucson, for appellees.

HOLOHAN, Justice.

This is a products liability action in which an allegedly defective automobile overturned, killing the driver. Appellant Rosemary Englehart, the driver's wife, brought an action in the superior court against the auto manufacturer and the retail dealer. Following a jury verdict in favor of both defendants, the plaintiff appealed. The Court of Appeals, Division Two, in a memorandum decision (2 CA–CIV 2761 filed April 25, 1978), affirmed the decision of the trial court. We granted plaintiff's petition for review. For the reasons which follow, the decision of the Court of Appeals is vacated and the judgment of the superior court is reversed.

On February 22, 1974, Gerald D. Englehart was driving home from the bar which he and his wife operated in Sahuarita, Arizona. He was driving a Jeep Wagoneer that he had purchased from defendant Gal-

loway Motors. His wife left the bar a short time after he did, driving another car. On her way home, she came upon her husband's jeep overturned in the roadway.

The police investigation indicated that, as the jeep had been traveling north, its right wheels had left the pavement for about 100 feet, and that it had then returned to the pavement and overturned. When it came to rest, the jeep lay on its roof facing south. Its left front wheel had come off and was found about 95 feet southwest of the overturned jeep. A number of gouge marks in the pavement and the damage to the vehicle itself were the only other clues the investigators could find to reconstruct the accident.

An autopsy revealed that Mr. Englehart had been drinking rather heavily that day. His blood-alcohol level was .23 percent, considerably above the .10 level which raises a presumption of intoxication.

Plaintiff based her action on the theory of strict liability for injury caused by a defective product. The only significant fact at issue in the trial was whether the wheel came off the jeep before or after it overturned. Plaintiff theorized that the steering knuckle was defective, thereby allowing the wheel to work itself loose and come off. When the wheel came off, the victim lost control and the jeep overturned. Defendants' theory was that the victim's intoxication caused him to lose control, and that in an attempt to retain control he turned too sharply, causing the vehicle to overturn. Defendant contended that the knuckle was not defective, but that the bolts holding the wheel to the knuckle were torn out when the weight of the tumbling jeep came down with full force upon that wheel.

The trial judge refused to allow plaintiff's principal expert witness to give his opinion as to when in the course of the accident the wheel came off the jeep. The witness, Lester E. Hendrickson, was a professor of metallurgy and physics at Arizona State University. He was allowed to testify extensively regarding the metallic properties of the allegedly defective steering knuckle and other parts of the jeep damaged in the accident. Plaintiff's attorney then attempted in several different ways to lay a foundation for Dr. Hendrickson to testify regarding the path of the vehicle and, most significantly, the point at which the wheel separated from the vehicle. The defendants repeatedly objected that Dr. Hendrickson was not qualified as an accident reconstructionist, and therefore could not render such an opinion based upon the available evidence.

In an offer of proof Dr. Hendrickson identified a point on the roadway at which he believed the wheel must have broken off from the vehicle. He based his opinion on damage to the wheel, damage to the vehicle itself, the location at which each part came to rest, marks in the pavement, and certain principles of physics. The trial court nevertheless refused to admit this testimony. Plaintiffs contend that this constitutes reversible error. We agree.

■ Whether a witness is competent to testify as an expert is a matter primarily for the trial court and largely within its discretion. We will not overrule the trial judge's decision in this regard unless there is a clear abuse of discretion. *State v. Macumber*, 112 Ariz. 569, 544 P.2d 1084 (1976); *Allied Van Lines v. Parsons*, 80 Ariz. 88, 293 P.2d 430 (1956); Udall, Arizona Law of Evidence § 23.

■ As defendants correctly contend, the fact that a witness has qualified as an expert on previous occasions does not make him any more qualified to testify in the case at bar. The court must determine in each case whether the expertise of the witness is applicable to the subject about which he offers to testify. A witness must indicate that his training and experience qualify him to render enlightened opinions and draw sophisticated conclusions from the particular type of evidence available in a given accident.

"[T]he only true criterion is: on *this subject* can a jury receive from *this person* appreciable help? In other words, the test is a relative one, depending on the

particular subject and the particular witness with reference to that subject, and is not fixed or limited to any class of persons acting professionally: . . . 'The subjects to which this kind of evidence is applicable are not confined to classed and specified professions. It is applicable wherever peculiar skill and judgment, applied to a particular subject, are required to explain results or to trace them to their causes.' (Citation omitted.)" VII Wigmore, Evidence § 1923.

■ Plaintiff's offer of proof indicates that Dr. Hendrickson's proposed testimony was based not merely upon his expertise as a metallurgist, but also upon his knowledge of mechanics and physics. Like any accident reconstructionist, Dr. Hendrickson was applying the laws of physics to observable physical evidence in order to reconstruct the sequence of events. The scientific knowledge that an accident reconstructionist has at his command in this context was likewise available to Dr. Hendrickson. He did not base his opinion upon evidence of bodily injuries, traffic conditions, the victim's driving skills or handicaps, or other evidence not directly related to the laws of physics. Where the only significant evidence available is in the form of vehicle damage, road damage, and measurements of various objects and their locations, a physicist and engineer can certainly draw conclusions more precisely and scientifically than the average juror. An expert is merely a witness whose special knowledge, when applied to the facts, will aid the jury in its deliberations. *State v. Macumber, supra* ; *Board of Regents of University and State Colleges of Arizona v. Cannon*, 86 Ariz. 176, 342 P.2d 207 (1959).

It is clear that Dr. Hendrickson was qualified to testify regarding the point at which the wheel came off the jeep. Was the trial court's refusal to allow his testimony an abuse of discretion? We conclude that it was.

Since there were no eyewitnesses to the accident, the case had to be resolved solely on the basis of the physical facts and their

significance. The testimony of Dr. Hendrickson was essential to plaintiff's case.

The court allowed Robert Blaine, one of the defense expert witnesses, to elaborately detail the movement of the vehicle as the defendants theorized it. Blaine's background is similar to Hendrickson's. It includes a bachelor's degree in mechanical engineering and 30 years' experience working in the auto industry, but no training in accident reconstruction.

Considering these factors and the impact that Dr. Hendrickson's testimony might have had on the jury, we conclude that the court abused its discretion in refusing to permit plaintiff's expert, Dr. Hendrickson, to testify to the matters contained in plaintiff's offer of proof.

■ Plaintiff raises two other issues on appeal. She contends that the trial court erred in instructing the jury on the presumption of intoxication while refusing to instruct them on the presumption that the decedent exercised due care. We find no error in the trial court's action in this instance. The presumption of due care exists only in the absence of evidence. It disappears when rebutted by any competent evidence. *Seiler v. Whiting*, 52 Ariz. 542, 84 P.2d 452 (1938). The evidence of decedent's intoxication was sufficient to destroy the presumption of due care.

■ The statutory presumption of intoxication, on the other hand, is of a different nature. Unlike the presumption of due care, which is really a substitute for actual evidence, the statutory presumption of intoxication arises from and gives meaning to the substantive evidence of blood-alcohol. While it can be rebutted, this statutory presumption does not vanish with presentation of evidence to the contrary. *See Gaethje v. Gaethje*, 7 Ariz.App. 544, 441 P.2d 579 (1968).

Finally, plaintiff contends that the trial court erred in refusing to give plaintiff's proposed instruction regarding contributory negligence.* The instruction was intended to explain to the jury that contributory negligence is not a defense to products lia-

* Plaintiff's requested instruction reads as follows:

"The type of case before you is called strict products liability. In this type of case contrib-

bility. While this statement is correct as far as it goes, the proposed instruction can hardly be considered a model of clarity.

In *O. S. Stapley Company v. Miller*, 103 Ariz. 556, 447 P.2d 248 (1968), this court considered the applicability of contributory negligence to products liability. Breaking down the generic term "contributory negligence" into three categories, we held that contributory negligence in its ordinary sense is not a defense to strict liability, but that "assumption of risk" and "unanticipated misuse" are proper defenses. The present case clearly does not involve an "assumption of risk," since defendant presented no evidence to indicate that the decedent was aware of any defect in the jeep. Nor can the doctrine of "unanticipated misuse" be applied to this case. Short of overturning the jeep, the decedent did not use the vehicle in any way which was not reasonably foreseen by the manufacturer. If decedent's driving caused the jeep to overturn, defendants prevail not because of the doctrine of "unanticipated misuse," but because no causal link exists between a defect and the decedent's death.

■ The evidence of plaintiff's intoxication was admissible only to support defendants's theory that the accident was caused by decedent's reckless driving and not by a defective wheel. Because both defendants pled contributory negligence in their answers, because they did not amend the pleadings prior to trial, and because they were allowed to fully present their evidence of the decedent's intoxication, the jury could have easily been misled into considering contributory negligence in their deliberations. In *Sax v. Kopelman*, 96 Ariz. 394, 396 P.2d 17 (1964) we held:

> "It makes no sense to us to allow a defendant who has no evidence of contributory negligence to assert this defense in his answer, read the answer to the jury,

argue the issue during the course of the trial and then leave the issue in limbo when the court instructs the jury. We are of the opinion that the only effective way of 'not submitting the issue to the jury,' [citation omitted] under such circumstances is to withdraw the issue of contributory negligence from the jury's consideration." 96 Ariz. at 397, 396 P.2d at 19.

The same reasoning applies where the evidence exists but the defense is not allowed as a matter of law. In order for the court to withdraw the issue from the jury's consideration, some type of limiting instruction must be given. On remand the issue of contributory negligence should be removed from the case, and appropriate instructions can be presented which explain the limited significance of the deceased's intoxication.

Reversed and remanded.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.

---

utory negligence is not a defense. In this case *the conduct of plaintiff's decedent is material* only to determine what caused his death. However, a defendant who helped cause decedent's death, as I have instructed you, may not avoid liability by claiming that some other cause (such as the conduct of plaintiff's dece-

dent) help cause the death. Consequently, if you find pursuant to my instructions that both the conduct of a defendant and the conduct of plaintiff's decedent helped cause the death, then such defendant is liable and your verdict must be for plaintiff."