Joseph HANDLEY, Appellant,

v.

STATE of Alaska, Appellee.

Nos. 3946, 4935.

Supreme Court of Alaska.

Aug. 29, 1980.

---

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

2. Rule 29(a), Alaska R. Crim. P.

John F. Rosie, Whiting & Rosie, Fairbanks, for appellant.

Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

The pivotal issue in these appeals[1] is whether the trial court erred in determining whether a witness was qualified to testify as an expert. We believe error was committed and reverse and remand the case for a new trial.

After trial by jury in the superior court, Joseph Handley was convicted of first degree murder[2] and shooting with in-

---

\* This case was submitted to the court for decision prior to Justice Boochever's resignation.

1. In addition to appealing the exclusion of the testimony of his expert witness (No. 3946), Handley has also appealed the trial court's denial of his motion for a new trial on the basis of newly discovered evidence (No. 4935). The two appeals have been consolidated.

2. At the time of the offense, AS 11.15.010 provided:

*First degree murder.* A person who, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate, rape, arson, robbery, or burglary kills another, is guilty of murder in the first degree, and shall be sentenced to imprisonment for not less than 20 years to life.

In its recent revision of the criminal statutes, the state legislature repealed this section, effective January 1, 1980. Ch. 166, § 21, SLA 1978.

tent to kill.[3] Handley's defense to each of those charges was one of diminished capacity.[4] While he did not dispute the state's allegation that he had shot two people, killing one of them, Handley claimed that these acts were done without the particular intent or mental state necessary to support a finding of guilt on either charge. Specifically, he argued that he shot his victims while in an "alcoholic blackout,"[5] which deprived him of the ability to premeditate, deliberate or form an intent to kill.[6]

In support of his defense of diminished capacity, Handley attempted to introduce the testimony of Dr. John Baertschy. In essence, Dr. Baertschy's testimony would have been that, in his opinion, Handley was in an alcoholic blackout at the time of the shootings, which made him unaware of what he was doing. The prosecution objected to Dr. Baertschy's testimony, arguing that he was not qualified to testify as an expert on the subjects in question, namely: the phenomenon of alcoholic blackout

and its effect, if any, on Handley's mental state at the time he committed the acts leading to his conviction. After voir dire examination, conducted outside the presence of the jury, the objection was sustained and Dr. Baertschy was not permitted to testify on those subjects.

The state's objection to Dr. Baertschy's testimony was two-fold. First, it was the state's position that Dr. Baertschy was not qualified because he is not a clinical psychologist, qualified to be licensed under Alaska law.[7] Second, the state contended that he was not otherwise qualified, by virtue of his training and experience, to give opinion testimony on the particular subjects forming the basis for the defense of diminished capacity, i. e., the phenomenon of alcoholic blackout and how such a condition might have affected Handley's ability to premeditate, deliberate or form an intent to kill.[8] The state makes the same arguments in this appeal.

---

The conduct proscribed in the former section is now covered by AS 11.41.100(a)(1).

3. At the time of the offense, AS 11.15.150 provided:
   *Shooting, stabbing or cutting with intent to kill, wound or maim.* A person who maliciously shoots, stabs, cuts, or shoots at another person with intent to kill, wound, or maim him is punishable by imprisonment in the penitentiary for not more than 20 years nor less than one year.
   This section was also repealed by ch. 166, § 21, SLA 1978, effective January 1, 1980. The conduct proscribed is now covered by AS 11.41.-200(a)(1) and 11.31.100(d)(1).

4. The defense of diminished capacity was described in *Johnson v. State*, 511 P.2d 118 (Alaska 1973):
   The diminished capacity doctrine is based on the theory that while an accused may not have been suffering from a mental disease or defect at the time of his offense, sufficient to absolve him totally of criminal responsibility, the accused's mental capacity may have been diminished by intoxication, trauma, or mental disease to such an extent that he did not possess a specific mental state or intent essential to the particular offense.
   *Id.* at 124 (footnote omitted). *See also* AS 11.70.030.

5. Shortly after he shot his victims Handley was arrested and given a breathalyzer examination at police headquarters. The examination indi-

cated that his blood alcohol content at that time was 0.14 percent. Handley, who had a history of alcohol abuse, maintained that he could not remember the details of the shooting incident because of his drunken condition. Other witnesses, however, testified that he appeared to be in control of himself and not overly intoxicated. Whether Handley was sufficiently intoxicated to be suffering from an alcoholic blackout, or otherwise *mentally impaired* was, of course, a question for the trier of fact.

6. In order to obtain a conviction on the charge of first degree murder, the state was required to prove beyond a reasonable doubt that Handley acted with "deliberate and premeditated malice." Former AS 11.15.010, quoted in note 1 *supra*. It was also required to prove that he acted with specific intent or purpose to kill. *Id.*; *Gray v. State*, 463 P.2d 897, 903 (Alaska 1970). Proof of malice and the same specific intent was also required for conviction under former AS 11.15.150. *See* note 2 *supra*; *McCracken v. State*, 521 P.2d 449, 512 (Alaska 1974). Thus, each of the described mental states was an essential element of one or both of the crimes charged.

7. *See* AS 08.86.130.

8. The exact basis upon which the court sustained the state's objection to Dr. Baertschy's testimony is not clear. The court stated only

■ The decision whether to permit a witness to testify as an expert is one committed to the sound discretion of the trial court. *Pederson v. State*, 420 P.2d 327, 335 (Alaska 1966). Such decisions are reviewable only for abuse. *Id.* Thus, the question that we must now decide is whether in disallowing Dr. Baertschy's testimony the trial court abused its discretion. *Lewis v. State*, 469 P.2d 689, 695 (Alaska 1970). The answer to that question turns upon "whether the reasons for the exercise of [the court's] discretion are clearly untenable or unreasonable." *Id.* By this, "we mean [whether] he either misconstrued or misapplied the rule concerning the amount of skill required to qualify one as an expert witness, where the rule had an important bearing upon appellant's case." *Id.* at 697. In the case at bar, we are convinced that the trial court did abuse its discretion. Moreover, since Dr. Baertschy's testimony was the key to Handley's defense of diminished capacity, we are unable to say that its exclusion did not appreciably affect the jury's verdict. Thus, the court's error in refusing to admit that evidence cannot be regarded as harmless. *Love v. State*, 457 P.2d 622 (Alaska 1969). Accordingly, Handley's conviction must be reversed.

Dr. Baertschy holds a bachelor's degree in psychology from the University of Wisconsin, a master's degree in counseling psychology from the University of Denver, and a doctorate from the University of Colorado. The latter is an interdisciplinary degree, combining work in the departments of psychology and sociology, with declared competency in social psychology, criminology in deviant behavior and social theory. Prior to obtaining this degree he served a one year internship under a board certified psychiatrist and also a board certified clinical psychologist.

After obtaining his doctorate, Dr. Baertschy did post-graduate work in alcohol and drug education, rehabilitation and prevention, under the auspices of the Department of Social Actions, United States Air Force. In the Air Force, he spent over six years at a disposition center for court martialed enlisted personnel, working with deviant behavior cases, approximately half of which were related to middle and late stages of alcoholism. This was followed by a year and a half devoted to alcohol education and work in the area of outpatient rehabilitation.

At the time of trial, Dr. Baertschy was director of clinical services for the Fairbanks Native Association, Comprehensive Alcoholism Program. In that capacity, he was responsible for the overall treatment program, which included an alcohol detoxification center, a half-way house and a treatment facility, all located in the Fairbanks area. At that time, there were twenty in-patients in the program and a large number of persons being treated on an outpatient basis.

■ Dr. Baertschy estimated that since 1968, when he entered the field, he had seen between 2,000 and 3,000 problem cases, at least one-third of which were related to alcohol abuse. Some of those cases involved firsthand observations of intoxicated persons whom Dr. Baertschy believed to be suffering from alcoholic blackout: "[T]hey would appear as if they could attempt to reason but in reality they could not reason and they were not aware of what was going on." Dr. Baertschy also had read professional journal articles pertaining to the phenomenon of alcoholic blackout.[9]

■ There is no requirement that a witness possess a particular license or academic degree in order to qualify as an expert.

that it was "going to sustain the objection and not allow Dr. Baertschy to testify on this ultimate question." For the purposes of this opinion, we have assumed that the court adopted both parts of the state's argument.

In our past decisions, we have expressly disapproved of the trial court's reliance on the "ultimate question" rationale in ruling on expert witness matters. *See Adkins v. Lester*, 530 P.2d 11, 16 (Alaska 1974); *Ferrell v. Bax-*

*ter*, 484 P.2d 250, 268 (Alaska 1971); *Oxenberg v. State*, 362 P.2d 893, 900 (Alaska), *cert. denied*, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961). Our new Rules of Evidence also adopt this view. *See* Rule 704, Alaska R.Evid.

**9.** The state makes much of the fact that Dr. Baertschy's opinion on the effect of alcoholic blackout reflected a "novel theory" not shown to have gained general acceptance among psychologists and psychiatrists. This objection

*See Lewis v. State*, 469 P.2d at 693–94; *Crawford v. Rogers*, 406 P.2d 189, 192 (Alaska 1965); *State v. Macumber*, 112 Ariz. 569, 544 P.2d 1084, 1085–86 (1976); *State v. McDonald*, 89 Wash.2d 256, 571 P.2d 930, 936–37 (1977). "The true criterion [in determining whether one qualifies as an expert and whether his opinion is admissible] is whether the jury can receive appreciable help from this particular person on this particular subject." *Crawford v. Rogers*, 406 P.2d at 192 (footnote omitted). Given his training and experience with alcohol abuse, and its affect upon individuals, we believe that Dr. Baertschy met this requirement.[10] Thus, we conclude that the court erred in refusing to admit his testimony.

For the reasons already stated, such error requires reversal of Handley's conviction. Therefore, the other issues raised by these appeals need not be addressed.

REVERSED and REMANDED for a new trial.

goes to the weight rather than the admissibility of such evidence. *State v. McDonald*, 89 Wash.2d 256, 571 P.2d 930, 936–37 (1977). Expert testimony based on the same theory has been admitted in other cases in Alaska. *See, e. g., O'Leary v. State*, 604 P.2d 1099, 1103 n.8 (Alaska 1979); *Ahwinona v. State*, 598 P.2d 73, 75 (Alaska 1979).

**10.** In *State v. Macumber*, 544 P.2d at 1085 (citations omitted), the Arizona Supreme Court stated:

An expert is one whose opinions depend upon special knowledge with which he can assist the jury. He need not be a professional, but may be a lay person who has special knowledge superior to men in general through actual experience or careful study. He need not have the highest degree of skill or knowledge, but that lack of degree goes to the weight of his testimony before the trier of fact and not to admissibility.